**Sharon L. ROCKSTROH and Carl R. Rockstroh**

v.

**A.H. ROBINS COMPANY, INC. and Hugh J. Davis, Jr., M.D.**

**Civ. A. No. M-82-108.**

United States District Court,
D. Maryland.

Feb. 20, 1985.

Michael A. Pretl, Nicole Schultheis, H. Robert Erwin, Jr., and Pretl & Schultheis, P.A., Baltimore, Md., for plaintiffs.

Charles P. Goodell, Jr., Susan T. Preston, and Semmes, Bowen & Semmes, Baltimore, Md., for defendant A.H. Robins Company, Inc.

Joseph G. Finnerty, Jr., Deborah E. Jennings, and Piper & Marbury, Baltimore, Md., for defendant Hugh J. Davis, Jr., M.D.

## MEMORANDUM AND ORDER

JAMES R. MILLER, Jr., District Judge.

Presently pending in this action are several Motions for Summary Judgment filed by defendant, A.H. Robins Company, Inc. ("Robins") (Paper Nos. 36–45), in which defendant Hugh J. Davis, Jr., M.D., has joined (Paper Nos. 46–55). Plaintiffs have filed answers to these motions (Paper Nos. 63–68), to which Robins has filed replies (Paper Nos. 70 & 75). Plaintiffs have filed also a supplemental memorandum (Paper No. 76), to which Robins has also filed a reply (Paper No. 77). No hearing is necessary to decide the motions. Local Rule 6(E).

I. *Statute of Limitations*

In four of the cases consolidated for trial in March 1985, defendants have moved for summary judgment based on the statute of limitations. In *Rockstroh v. A.H. Robins Co.*, M–82–108, *Manipole v. A.H. Robins*, M–83–347, *Pearsall v. A.H. Robins Co.*, M–83–702, and *Redmond v. A.H. Robins Co.*, M–83–1712, defendants assert that the plaintiffs' causes of action are barred by the statute of limitations (Paper Nos. 42–49). The plaintiffs in these cases have filed an opposition (Paper No. 63).

A. *Which Law Applies*

 In diversity cases such as these, this court must apply the law of the forum state, Maryland, including its choice of law rules. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In tort actions, Maryland applies the doctrine of *lex loci delecti*, so that the substantive law of the state where the wrong occurs governs. *Hauch v. Connor*, 295 Md. 120, 453 A.2d 1207 (1983). *See also Pottratz v. Davis*, 588 F.Supp. 949 at 951 (D.Md. June 1, 1984); *President and Directors of Georgetown College v. Madden*, 505 F.Supp. 557, 569 (D.Md.1980), *aff'd in part and appeal dismissed in part*, 660 F.2d 91 (4th Cir.1981). As to matters of procedural law, however, Maryland law applies the law of the forum. *Doughty v. Prettyman*, 219 Md. 83, 88, 148 A.2d 438 (1959). *See also President and Directors of Georgetown College v. Madden*, 505 F.Supp. at 569.

 Maryland law governs the applicability of the relevant statute of limitations. *Pottratz v. Davis*, at 952; *Mills v. International Harvester Co.*, 554 F.Supp. 611, 612 (D.Md.1982); *Doughty v. Prettyman*, 219 Md. at 88, 148 A.2d 438. Therefore, the characterization, *i.e.*, substantive or procedural, which a Maryland state court would give the statute of limitations of the state whose substantive law applies, is binding on this court. *See Pottratz v. Davis*, at 952; *President and Directors of George-*

*town College v. Madden*, 505 F.Supp. at 571.

"Under Maryland law, a statute of limitations is generally considered to be procedural. *Doughty v. Prettyman*, 219 Md. at 88, 148 A.2d at 438. 'However, when the statute of limitations bars the rights and not merely the remedy, an exception to the general rule applies and the statute of limitations is considered substantive.' *President and Directors of Georgetown College, supra* at 571. (Footnote omitted). The statute, if conceived of as a grant of immunity from suit, is also considered to be substantive. *President and Directors of Georgetown College, supra* at 571."

*Pottratz v. Davis*, at 952.

The parties agree that Maryland law governs the limitations issue in *Rockstroh*, *Pearsall*, and *Redmond*. With regard to *Manipole*, where the alleged wrongs occurred in Florida, defendants assert that the Florida statutes of limitations, F.S.A. §§ 95.11(3) and 95.031(2), should be characterized as substantive law, and that, therefore, Florida law should govern the limitations issue in *Manipole*.[1] Plaintiff disputes this contention and argues that Maryland law should also govern the limitations issue in *Manipole*.

In *Bauld v. J.A. Jones Construction Co.*, 357 So.2d 401, 402 (Fla.1978), the Supreme Court of Florida described the applicable Florida statutes as follows:

"Section 95.11(3)(a), Florida Statutes (1975), provides that the limitations period for negligence actions is four years. Section 95.031 deals with the computation of time. It states that '[e]xcept as provided ... in these statutes, the time within which an action shall be begun under any statute of limitations runs from the time the cause of action accrues.' Subsection (1) of Section 95.031 provides, in pertinent part, that '[a] cause of action accrues when the last element constituting the cause of action occurs.' Subsection (2) provides that in actions for products liability, the period runs 'from

1. The parties have agreed that the substantive law of Florida is applicable in *Manipole*.

the time the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence,' but that in any event the action must be begun 'within 12 years after the date of delivery of the completed product to its original purchaser ... regardless of the date the defect in the product was or should have been discovered.' "

Defendants argue that, because the Florida courts have found their limitations statutes to be substantive, this court should apply Florida law for the limitations issue. This argument is misplaced for two reasons. First, the characterization which Florida courts have given to their statutes is not dispositive. Florida law will govern the limitations issue in *Manipole* only if the Florida statutes would be characterized as substantive by *Maryland* state courts. *See Pottratz v. Davis*, at 952; *President and Directors of Georgetown College v. Madden*, 505 F.Supp. at 571. Second, the provision of the Florida statutes, which is arguably substantive under Maryland law, is that part of § 95.031 requiring an action to be brought within 12 years after the date of delivery of the product to its original purchaser. This court, however, need not consider whether this provision is substantive or procedural under Maryland law, since defendants do not, and indeed could not, assert that the *Manipole* action is barred under it. The *Manipole* suit was filed in 1983, less than 12 years after the 1973 insertion of Mrs. Manipole's Dalkon Shield.[2]

■ Section 95.11(3) provides that actions for negligence, fraud, and products liability accrue when plaintiff discovers her injury, and that, thereafter, plaintiff has four years within which to institute suit.

This statute does not bar a plaintiff's right, but, instead, merely bars the plaintiff's remedy if she does not file suit within four years from the time the cause of action accrues. Since § 95.11(3) is similar in concept to the Maryland statute, it is clear that the Florida statute would be characterized under Maryland law as procedural as is the Maryland statute itself. *See President and Directors of Georgetown College v. Madden*, 505 F.Supp. at 571; *Doughty v. Prettyman*, 219 Md. at 88, 148 A.2d 438. Accordingly, Maryland law will govern the limitations issue in *Manipole* as well as in the other cases at issue here.

**B. *Md. Cts. & Jud. Proc. Code Ann., § 5–204***

■ Before addressing the substantive merits of defendants' other motions, this court will consider plaintiffs' contention that under the *Md. Cts. & Jud. Proc. Code Ann.*, § 5–204, Robins cannot invoke limitations as a defense because it did not comply with the requirements of the Maryland Corporations and Associations Article. In that regard, this court will follow the previous holdings of other members of this court that § 5–204 is part of the substantive law of Maryland, even though statutes of limitation are generally considered procedural. *Amsler v. A.H. Robins Co.*, B–82–3295 (D.Md. Oct. 19, 1984) (attached to Paper No. 63 as Exhibit 5); *Seigman v. Ortho Pharmaceutical Corp.*, H–82–1741, slip op. at 4 (D.Md.1984). This finding was explicitly approved by a Maryland state court in *Bigelow v. Davis*, No. 83–213–002/L–8951 (Circuit Court for Baltimore City, Aug. 14, 1984) (attached to Paper No. 43 as Exhibit 7). Therefore, plaintiffs cannot rely upon § 5–204 in these cases, because the substantive law of

---

**2.** Since the 12 year limitation could not apply in this situation, this court also need not address plaintiffs' contention that the Florida statute has been declared unconstitutional, because it is only this 12 year provision that Florida courts have found to be in violation of Florida's state constitution when applied to particular circumstances. *See Ellison v. Northwest Engineering Co.*, 521 F.Supp. 199 (S.D.Fla.1981); *Universal Engineering Corp. v. Perez*, 451 So.2d 463 (Fla. 1984); *Diamond v. E.R. Squibb and Sons, Inc.*,

Maryland is not applicable to any of these four cases.[3]

### C. *Maryland Limitations Standard*

■ The applicable statute of limitations is the general three year statute of limitations for civil actions provided in the *Md. Cts. & Jud.Proc.Code Ann.,* § 5–101. As there is no statutory guidance as to when a cause of action accrues, the question of when the action accrues is left to judicial determination. *Harig v. Johns-Manville Products,* 284 Md. 70, 75, 394 A.2d 299 (1978).

In *Poffenberger v. Risser,* 290 Md. 631, 431 A.2d 677 (1981), the Maryland Court of Appeals adopted the "discovery" rule for determining when a cause of action accrues. Thus, "the cause of action accrues when the claimant in fact knew or reasonably should have known of the wrong." 290 Md. at 636, 431 A.2d 677. The court continued that:

"[T]he discovery rule contemplates actual knowledge—that is, express cognition, or awareness implied from 'knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry [thus, charging the individual] with notice of all facts which such an investigation would in all probability have disclosed if it had been properly pursued.' "

290 Md. at 637, 431 A.2d 677 (quoting *Fertitta v. Bay Shore Dev. Corp.,* 252 Md. 393, 402, 250 A.2d 69 (1969)). *See also O'Hara v. Kovens,* 60 Md.App. 619, 628, 484 A.2d 275 (1984); *Lutheran Hospital v. Levy,* 60 Md.App. 227, 233, 482 A.2d 23 (1984).

■ Under Maryland law, the plaintiff must have knowledge not only of the injury, but also that the injury resulted from a wrong. *Jones v. Sugar,* 18 Md. App. 99, 305 A.2d 219 (1973). Thus, as Judge Black stated in *Amsler v. A.H. Robins Co.,* B–82–3295:

"that the plaintiff knows that he has been injured and that a product may have caused the injury may not be sufficient knowledge to trigger the discovery rule, because the cause of action may only be actionable when the plaintiff learns that the product may be defective or that its manufacturers may have been negligent. Only then does the plaintiff have an injury for which there is a legal remedy."

Transcript at 5 (Paper No. 63, Ex. 5). The time when the plaintiff becomes aware may depend upon the nature of the injury. The limitations period will run from the time of injury only when the plaintiff knew or should have known that the injury was the result of a wrong.

"In many cases he will or should know at the time of or soon after the wrongful act that he has been the victim of negligent medical care; in other settings of fact it may be impossible for him, as a layman, unskilled in medicine, reasonably to understand or appreciate that actionable harm has been done him. If this is fairly the fact, we think he should have the statutory time from the moment of discovery, the moment he knows or should know he has a cause of action, within which to sue."

*Waldman v. Rohrbaugh,* 241 Md. 137, 145, 215 A.2d 825 (1966) (quoted in *Jones v. Sugar,* 18 Md.App. at 104, 305 A.2d 219).

### D. *Standard on Summary Judgment*

■ On summary judgment, the moving party has the burden of proving that the material facts, as presented, are not in dispute, and that there can be no reasonable dispute as to the legal conclusions to be drawn from these facts. *Adickes v. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Morrison v. Nissan Co., Ltd.,* 601 F.2d 139, 141 (4th Cir.1979); *Carroll v. United Steel-*

---

397 So.2d 671 (Fla.1981); *Overland Construction Co. v. Sirmons,* 369 So.2d 572 (Fla.1979).

**3.** The parties have agreed that the substantive law of the following states is applicable in these cases:

*Rockstroh*—New York
*Manipole* —Florida
*Pearsall* —Pennsylvania
*Redmond* —Michigan

*workers of America,* 498 F.Supp. 976, 978 (D.Md.1980). In deciding the motion, the court must view the facts and the inferences from those facts in the light most favorable to the nonmoving party. *Cole v. Cole,* 633 F.2d 1083, 1089 (4th Cir.1980). Even where there is no dispute as to the basic facts, summary judgment will be inappropriate if the parties disagree on the inferences which may reasonably be drawn from the undisputed facts. *Morrison v. Nissan Co., Ltd.,* 601 F.2d at 141.

### E. *Facts*

#### 1. *Rockstroh*

Plaintiff Rockstroh alleges that her Dalkon Shield was inserted in 1973 and that in 1976 she began experiencing fever, vomiting, diarrhea, and severe lower abdominal pains. It is undisputed that her IUD was removed in July, 1976 and that this suit was not filed until January, 1982.

In July, 1976, she was admitted to Geneva General Hospital, where Dr. McCormick removed her IUD (Paper No. 42, Ex. 1). Plaintiff testified that she was told by Dr. McCormick, at that time, that the IUD was causing her infection (*id.,* Ex. 2). She also testified that she was told that there was a chance that she could have problems having children (*id.,* Ex. 3). In 1981, plaintiff saw a newsletter about women who were suing Robins for injuries allegedly caused by the Dalkon Shield (*id.,* Ex. 4). Robins asserts that the undisputed evidence indicates that plaintiff knew of her injuries in 1976, and believed these injuries were caused by the Dalkon Shield. Furthermore, defendants assert that, because Mrs. Rockstroh testified that as a nurse she understood that IUDs were associated with infections (*id.,* Exs. 5 & 6), she had knowledge from the date of her injuries. Thus, defendants contend, the action was not filed within three years of Mrs. Rockstroh's discovery of the nature and cause of her injuries.

Plaintiffs assert, however, that when the Dalkon Shield was removed from Mrs. Rockstroh, the doctor did not indicate that the injuries were the result of using a defective product (Paper No. 63, Ex. 1). Mrs. Rockstroh asserts that she has had minimal exposure to gynecology in her nursing career and that she did not acquire knowledge that the Dalkon Shield may have been defective until 1981, when she read a newsletter published by the National Women's Health Network (*id.*). Accordingly, plaintiffs in *Rockstroh* assert that the action was timely filed in January, 1982.

#### 2. *Manipole*

Plaintiff Manipole alleges that her Dalkon Shield was inserted in 1973, and that she began experiencing severe abdominal pain in September, 1974. Her IUD was removed in October, 1974, and the instant suit was filed in February, 1983.

In her deposition, Mrs. Manipole stated that, when her IUD was removed in October, 1974, her physician informed her that the IUD had caused her infection (Paper No. 42, Ex. 1). Robins asserts that this demonstrates that plaintiffs knew of their injuries in 1974 and believed these injuries were caused by the Dalkon Shield. Thus, defendants contend, plaintiffs had discovered the nature and cause of their actions at that time, and this action is barred by the statute of limitations.

Mrs. Manipole testified that, when the device was removed, she was not told that it was defective in any way, and she was not told that the Dalkon Shield was a dangerous device or that there was a difference between the Dalkon Shield and other IUDs (Paper No. 63, Ex. 2). Furthermore, she testified she was never told that the Dalkon Shield had been taken off the market. She said she did not learn that other women had suffered injuries as a result of the Dalkon Shield until 1982, when she saw an ad by Dr. Berger and a program on Sixty Minutes (*id.*). She stated that the first time she ever thought that the Dalkon Shield may have been defective was when she saw this ad (*id.*). Therefore, plaintiffs contend, the complaint was timely filed in February, 1983.

### 3. *Pearsall*

Plaintiff Pearsall alleges that her Dalkon Shield was inserted in 1973, and that in 1979 she began to experience pain, fever, and tenderness during her pelvic exam. She was treated for pelvic inflammatory disease by .Dr. Gallagher in December, 1979, and her IUD was removed in February, 1980 due to continued pain and fever. On March 4, 1983, she filed this action.

Mrs. Pearsall testified at her deposition that in February, 1980, when her IUD was removed, her physician informed her that the IUD was the cause of her infection (Paper No. 45, Ex. 2). She also testified that on or about 1976 she had read a newspaper article relating to the problems that women were experiencing with the use of the Dalkon Shield (*id.*, Ex. 3). Also, she testified that during the mid-1970's she had learned that the device had been taken off the market (*id.*). When she was examined by Dr. Gallagher in December, 1979 for her complaint of abdominal pain, she was examined specifically for a problem with the IUD (*id.*, Ex. 7). Finally, Mrs. Pearsall stated that when the device was removed, she understood that the IUD caused her infection, and that in either December, 1979 or February, 1980 her physician had indicated to her that the thread may have acted as a wicking device for bacteria (*id.*, Ex. 8). Defendants assert that this evidence indicates that the *Pearsall* plaintiffs knew of their injuries and that they believed that these injuries were caused by the Dalkon Shield no later than February, 1980. Thus, defendants contend, the complaint filed in March, 1983 is barred by the statute of limitations.

Plaintiffs contend that they were unaware that Mrs. Pearsall's infection had resulted from the defective nature of the Dalkon Shield until sometime after her surgery on March 4, 1980 for pelvic inflammatory disease (Paper No. 63, Ex. 3). Until that time, plaintiffs contend, she did not know that the Dalkon Shield was unsafe (*id.*). Finally, Mrs. Pearsall testified that when she discussed her concerns with Dr. Gallagher, he stated that information he had received from the company indicated that for individuals who were wearing the Dalkon Shield and had not experienced problems, it was probably safe for them to continue wearing it (*id.*). Thus, plaintiffs assert that the complaint, filed on March 4, 1983, was within three years of the time when plaintiffs "discovered" their cause of action and was timely filed.

### 4. *Redmond*

Plaintiff Redmond alleges that her Dalkon Shield was inserted in 1973 and that in 1976 she began experiencing fever and severe lower abdominal pain. In December, 1976, her IUD was removed, and in May, 1983, plaintiffs filed this action.

Mrs. Redmond testified that she understood that pelvic inflammatory disease was a risk of IUD use (Paper No. 44, Ex. 1). She also stated that two days after her IUD was removed, her doctor insinuated that the IUD was responsible for her infection (*id.*, Ex. 2). She did not investigate her cause of action until she saw a television program on Sixty Minutes, but she apparently was unsure of the date of the program (*id.*, Ex. 3). Finally, she testified that prior to her first ectopic pregnancy in June, 1980, she had read an article concerning the Dalkon Shield which had been posted on the bulletin board where she worked (*id.*, Ex. 4). She stated that the article noted that the use of the Dalkon Shield was one cause of pelvic inflammatory disease and sterility (*id.*). Robins asserts that this evidence indicates that the *Redmond* plaintiffs knew of their injuries in 1976, and believed that these injuries were caused by the Dalkon Shield. Thus, defendants contend, the suit filed in May, 1983 is barred by the statute of limitations.

Plaintiffs contend there is no indication in the record that Mrs. Redmond was aware the Dalkon Shield was considered dangerous in comparison to other IUDs, or that it was in any way defective. At her deposition, she testified that she had not been so informed by her doctors, and that she did not have such knowledge until she saw the program on Sixty Minutes (Paper

No. 63, Ex. 4). Although Mrs. Redmond is a nurse, plaintiffs indicate that she learned through her training only that there was a small risk of infection associated with IUDs in general. Thus, plaintiffs contend, they did not know until Mrs. Redmond saw the program on Sixty Minutes that they had a cause of action as a result of her use of the Dalkon Shield.

### F. Ruling

In each of these cases, it appears that plaintiffs were aware, more than three years prior to the filing of their claims, that the Dalkon Shield may have caused their injuries. It also appears, however, that in each case the inferences which can be drawn from the undisputed evidence are conflicting. There is no evidence that any of the plaintiffs, including the two nurses, possessed any special knowledge in the field of gynecology.

Knowledge that the injuries may have been caused by the Dalkon Shield does not, in and of itself, indicate that plaintiffs were aware that a wrong had been committed against them. There appears to be, in all four cases involved here, a dispute over whether the plaintiffs possessed any knowledge that the Dalkon Shield may have been defective, or that Robins may have been negligent in the production and testing of the Dalkon Shield. In all of these cases, plaintiffs testified that they did not have such knowledge.

As such, these cases are distinguishable from the state cases cited by the defendants. *See Grasso v. Davis,* No. 83 227 006/L–9613 (Circuit Court for Baltimore City, Aug. 14, 1984); *Smallwood v. Davis,* No. 83 346 013/L–14229 (Circuit Court for Baltimore City, Aug. 14, 1984); *Bigelow v. Davis,* No. 83 213 002/L–8951 (Circuit Court for Baltimore City, Aug. 14, 1984) (all attached to Paper No. 43 as Ex. 7). In *Grasso,* the plaintiff was told by her gynecologist at the time of her operation that the Dalkon Shield was defective and must be removed immediately. In *Smallwood,* the plaintiff was told that she was having

so many problems because she had the Dalkon Shield, which had been taken off the market. She stated that, to her, the fact that a product was taken off the market would mean that it was defective. Finally, in *Bigelow,* the plaintiff had consulted a lawyer, to determine whether or not she had a feasible case, more than three years prior to filing her lawsuit.

The circumstances involved in these cases are more akin to those found in *Amsler v. A.H. Robins Co.,* B–82–3295 (D.Md., Oct. 19, 1984), where Judge Black of this court held:

> "It is apparent that in 1975 Amsler did know that the Dalkon Shield played a role in her pelvic inflammatory disease. What is not at all clear is whether she knew that the Dalkon Shield caused her disease because it may have been defective or that Robins may have been negligent in the IUD's production, testing, and marketing. The facts alleged indicate that Amsler may well have learned of the wrong only in 1982 when she heard that others were suing Robins. Whether she knew enough information before 1982 to put her on actual notice that the Dalkon Shield could be defective remains in dispute."

(Paper No. 63, Ex. 5).

In sum, this court finds that in the four cases in question, there are conflicting inferences which could be drawn as to whether the plaintiffs knew that the Dalkon Shield was defective or that Robins had been negligent. Accordingly, the defendants' motions for summary judgment will be denied.

### II. Warranty, Involuntary Testing, and Battery Claims

Defendants have also moved, in all cases in this trial group, for summary judgment on the claims in which plaintiffs allege causes of action for breaches of express and implied warranty, involuntary testing, and battery (Paper Nos. 40 and 51). Plaintiffs have filed an opposition to the motion (Paper No. 64). In *Mawdsley v. A.H. Robins Co.,* B–82–106 (consolidated Dalkon

Shield cases, December 1984 Trial Group), Judge Black granted motions based on these issues (Paper No. 40, Ex. 1).

The only reason asserted by plaintiffs why this motion should not be granted is their assertion that all statutes of limitations should be tolled under *Md. Cts. & Jud. Proc. Code Ann.*, § 5–203, which provides:

> "If a party is kept in ignorance of a cause of action by the fraud of an adverse party, the cause of action shall be deemed to accrue at the time. when the party discovered, or by the exercise of ordinary diligence should have discovered the fraud."

Plaintiffs assert that the deposition testimony of Roger L. Tuttle, Robins' former counsel, to the effect that he was instructed in 1975 to destroy all documents relative to the defectiveness of the Dalkon Shield, and Robins' knowledge of the defectiveness of the products, requires tolling of the statute of limitations in these cases.

■ The party asserting that fraudulent. concealment tolls limitations has the burden of proving that it caused ignorance of her cause of action. *Leonardt v. Atkinson*, 265 Md. 219, 289 A.2d 1 (1972). Furthermore, the Maryland Court of Special Appeals stated in *Associated Realty Co. v. Kimmelman*, 19 Md.App. 368 at 372, 311 A.2d 464 (1973), that "it is obvious that the mere presence or absence of fraud is not necessarily determinative; rather, ... the controlling factor is whether or not the party has been kept in ignorance of his claim by the fraud."

■ Although the plaintiffs have indicated that there may have been fraudulent concealment to some degree on the part of the defendants, it is clear that an abundance of information regarding the alleged injuries caused by the Dalkon Shield has been available to the public for a number of years. Furthermore, Multidistrict Litigation with respect to the products liability litigation of the Dalkon Shield was taking place in the United States District Court of Kansas as early as 1975. Under these circumstances, this court finds that the plaintiffs have not met their burden of showing that their ignorance was caused by Robins' alleged fraudulent concealment. Therefore, the limitations periods involved were not tolled.

The plaintiffs have not otherwise presented any objections to the merits of the motion. The facts relevant to a determination of this motion are as follows:

Plaintiff Rockstroh was inserted with the device on December 10, 1973; her Complaint in this Court was filed on January 25, 1982. Plaintiff Redmond was inserted with the device in May, 1973; her Complaint was filed on May 23, 1982. Plaintiff Connelly was inserted with the device in the spring of 1973; her Complaint was filed March 24, 1983. Plaintiff Harris was inserted with an I.U.D. on August 29, 1972. Her Complaint was filed in this Court on March 24, 1983. Plaintiff Nuss was inserted with an I.U.D. on January 24, 1973. Her Complaint was filed in this Court on February 9, 1983. Plaintiff Manipole was inserted with a device in the spring of 1973. She filed her Complaint in this Court on February 3, 1983. Plaintiff Pearsall acquired an I.U.D. on June 4, 1973. She filed her Complaint on March 4, 1983. Plaintiff Williams was inserted with an I.U.D. on September 29, 1972. The Complaint filed on her behalf in this Court was filed in 1982. Finally, Plaintiff Truitt was inserted with an I.U.D. on August 8, 1972. She filed a Complaint before this Court on April 11, 1983.

■ The defendants assert that the warranty claims should be dismissed based on the four year statute of limitations in *Md. Com. Law Code Ann.*, § 2–725. The four year period runs from the date of tender of delivery of the goods, unless the warranty explicitly extends to future goods. As plaintiffs in this case have not asserted that the warranties alleged extended to future performance, this court will follow the finding of Judge Black in *Mawdsley v. A.H. Robins Co.* that the assertions made by plaintiffs do not meet the explicit standard required to constitute a warranty of future performance, and that

an implied warranty cannot extend to future performance (Paper No. 40, Ex. 1 and cases cited therein).

 With regard to the intentional tort of involuntary testing and the battery claims, the relevant statute is *Md.Cts. & Jud.Proc.Code Ann.*, § 5–105, which provides that battery actions must be brought within one year of the act giving rise to the cause of action. The parties do not dispute that the insertions of the Dalkon Shields in these cases occurred in 1972 or 1973. As there is no case extending the "discovery" rule to actions not coming within *Md.Cts. & Jud.Proc.Code Ann.*, § 5–101, the one year statute of limitations must apply in these cases. *Mawdsley v. A.H. Robins Co.*, B–82–106 (D.Md., Oct. 19, 1984) (attached to Paper No. 40 as Ex. 2). Accordingly, these claims are barred by the statute of limitations, and the motion for summary judgment as to these counts will be granted as well.

### III. *Consortium*

Defendants have moved for summary judgment as to the consortium counts of Richard Manipole in *Manipole v. A.H. Robins Co.*, M–83–347; John Redmond in *Redmond v. A.H. Robins Co.*, M–83–1712, and Wesley Truitt in *Truitt v. A.H. Robins Co.*, M–83–1068 (Paper Nos. 41 and 50). Plaintiffs have filed an opposition (Paper No. 68). The basis of these motions is that each of these men married their respective wives subsequent to the removal of the women's Dalkon Shields. Defendants assert that these individuals have failed to state a cause of action for loss of consortium because they were not married to the women prior to the removal of the IUDs.

It appears to be universally held that, in order to maintain a valid action for loss of consortium, the parties must be married at the time of the injury. *See, e.g., Curry v. Caterpillar Tractor Co.*, 577 F.Supp. 991 (E.D.Pa.1984); *Weaver v. G.D. Searle & Co.*, 558 F.Supp. 720 (N.D.Ala.1983); *Gillespie-Linton v. Miles*, 58 Md.App. 484, 473 A.2d 947 (1984) (and cases cited therein).

 Plaintiffs concede that the date of their marriages in each instance occurred subsequent to the use of the Dalkon Shield and the first manifestation of injury (Paper No. 68). While plaintiffs do not dispute the current state of the law, they contend that the law is unsound and unfair (*id.*). Plaintiffs, however, have failed to indicate any authority for their position, and it appears that none exists. This court is of the opinion that the rule is sound, and, in light of its uniform application, the defendants' motion will be granted.

### IV. *Other Motions*

Defendants have also filed motions for summary judgment on the plaintiffs' counts alleging intentional infliction of emotional distress (Paper Nos. 38 and 53), a private right of action under the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.* (Paper Nos. 39 and 54), and the strict liability claims in *Truitt v. A.H. Robins Co.*, M–83–1068, and *Redmond v. A.H. Robins Co.*, M–83–1712 (Paper Nos. 36, 37, 52, and 55). As the plaintiffs have indicated that they are withdrawing these claims and will not rely on them at trial (Paper Nos. 65–67), these motions will be denied as moot.

Accordingly, it is this 20th day of February, 1985, by the United States District Court for the District of Maryland, ORDERED:

1. That the Motions for Summary Judgment on the negligence, strict liability, fraud and conspiracy counts based on limitations, filed by the defendants, in *Rockstroh v. A.H. Robins Co.*, M–82–108; *Manipole v. A.H. Robins Co.*, M–83–347; *Pearsall v. A.H. Robins Co.*, M–83–702; and *Redmond v. A.H. Robins Co.*, M–83–1712, be, and the same are hereby, DENIED.

2. That the Motions for Summary Judgment, filed by the defendants, on the counts alleging causes of action for warranty, involuntary testing, and battery be, and the same are hereby, GRANTED.

3. That the Motions for Summary Judgment, filed by the defendants, on the

counts alleging loss of consortium in *Manipole v. A.H. Robins Co.*, M-83-347; *Redmond v. A.H. Robins Co.*, M-83-1712; and *Truitt v. A.H. Robins Co.*, M-83-1068, be, and the same are hereby, GRANTED.

4. That the Motions for Summary Judgment, filed by the defendants, on the counts alleging causes of action for intentional infliction of emotional distress, a private right of action under the Federal Food, Drug and Cosmetic Act, and strict liability in *Truitt v. A.H. Robins Co.*, M-83-1068, and *Redmond v. A.H. Robins Co.*, M-83-1712, be, and the same are hereby, DENIED as moot.

5. That the Clerk mail a copy of this Memorandum and Order to counsel for the parties.