**Judy PERLOV, et al.**

**v.**

**G.D. SEARLE & COMPANY.**

**Civ. No. Y–84–4504.**

United States District Court, D. Maryland.

Nov. 18, 1985.

Michael A. Pretl, Baltimore, Md., and Paul D. Rheingold, New York City, for plaintiffs.

Paul F. Strain, Baltimore, Md., Robert C. Tucker, Cleveland, Ohio, Nell B. Strachan, James L. Shea and Elizabeth C. Honeywell, Baltimore, Md., for defendant.

## MEMORANDUM

JOSEPH H. YOUNG, District Judge.

Three pre-trial motions must be resolved in this tort action for injuries from the use of the Copper 7 intrauterine device ("IUD"). Motions pending include defendant's motions for summary judgment on the statute of limitations and for exclusion of expert testimony, sanctions and costs, and plaintiffs' motion for a default judgment.

 Plaintiff's motion for a default judgment is based upon defendant's failure to file a timely answer. It was finally filed immediately upon receipt of the default motion. Although there is no apparent excuse for defendant's delay, default judgments are generally disfavored in law, and in the absence of any showing of prejudice which plaintiffs suffered as a result of the delay, this Court will use its discretion and deny the motion. *See Mason & Hanger-Silas Mason Co. v. Metal Trades Council,* 726 F.2d at 166, 168 (5th Cir.1984). Having denied this motion, the Court can reach defendant's underlying motions.

Defendant's motion for summary judgment rests on the assertion that plaintiffs' claims are barred by Maryland's three-year statute of limitations. There is no dispute that the appropriate statute of limitations to apply in this civil action is three years.

Md.Cts. & Jud.Proc. § 5–101; *Harig v. Johns-Manville Products,* 284 Md. 70, 73, 394 A.2d 299 (1978). Although ordinarily that statute begins to run at the time of injury, in this case the Maryland "discovery rule" should be utilized to determine when the cause of action accrued which is when the statute begins to run. Under this rule, the delayed filing of an action is tolerated for causes for action which are inherently unknowable, so the cause of action accrues only when "the claimant in fact knew or reasonably should have known of the alleged wrongs." *Poffenberger v. Risser,* 290 Md. 631, 636, 431 A.2d 677 (1981). This rule was adopted to mitigate the harshness of the statute of limitations for victims who cannot be charged with slumbering on their rights, *Poffenberger,* 290 Md. at 635, 431 A.2d 677, while still furthering the overall purpose of the statute of limitations, which is to ensure fairness to the defendant by encouraging the prompt filing of actions. Such promptness assures that no ancient obligations remain and that claims can be heard before "evidence has been lost, memories have faded, and witnesses have disappeared." *Order of R.R. Telegraphers v. Railway Express Agency,* 321 U.S. 342, 349, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944); *Harig,* 284 Md. at 76, 394 A.2d 299.

The only question for the Court in this particular case is when the cause of action accrued for the two plaintiffs Judy Perlov and Deborah A. Sauer.[*] This decision is made on the basis of the plaintiffs'

> "actual knowledge—that is express cognition, or awareness implied from knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry (thus charging the individual) with notice of all facts which such an investigation would in all probability have disclosed if it had been properly pursued."

*Poffenberger,* 290 Md. at 637, 431 A.2d 677 (bracketing in original), *Lutheran Hospital*

---

[*] Originally there were two additional plaintiffs, Sussman and Craig, who were included in this motion, but their cases have been dismissed.

*of Maryland v. Levy,* 60 Md.App. 227, 233, 482 A.2d 23 (1985).

In cases in which the injury is unknown, a person may be charged with notice of all facts upon discovering the nature and cause of the injury. *E.g., Harig,* 284 Md. at 71, 394 A.2d 299 (latent development of disease was inherently unknowable). In *Harig,* once the disease appeared and the cause was identified as asbestos exposure in the workplace, the possibility of an underlying wrong was obvious to plaintiffs. Similarly, in *Sisters of Mercy v. Gaudreau,* 47 Md.App. 372, 423 A.2d 585 (1980), the defective nature of a roofing job should have been patent to plaintiffs, because the roof had just been fixed yet it continued to leak. An expert's advice should be unnecessary in that type of situation.·

In some circumstances, however, an additional piece of information—namely an indication that there may have been a negligent act—may be necessary before an injured party can be charged with notice that a wrong may have been committed. For example, in some malpractice cases, unfortunate results do not necessarily lead one to assume that there must be an underlying tort. In *Lutheran Hospital,* 60 Md. App. at 236, 482 A.2d 23, the plaintiff continued to have problems with her ankle after being treated by her doctor for a break. She could have thought that the improper healing was due to any of a myriad of natural causes until a second doctor asked her who had told her to walk on her ankle. This question alerted her that "something wrong had been done" and at that point the cause of action accrued. *Id.* at 236, 482 A.2d 23. Thus, the additional piece of information about the possibility of negligence may come from an expert, but it could also come from a number of sources, including newspaper articles or advertisements.

A similar analysis applies in the case of infections from an intrauterine device. "Knowledge that injuries may have been caused by the (IUD) does not, in and of itself, indicate that plaintiffs were aware that a wrong had been committed against them." *Rockstroh v. A.H. Robins,* 602 F.Supp. 1259, 1267 (D.Md.1985) (Miller, J.). In *Rockstroh,* it was not clear whether plaintiffs, who knew they had pelvic infections from IUD's also knew more than three years before filing the action that the product may have been defective or that the manufacturer may have been negligent. Thus, there was a question of fact which was inappropriate to decide on a motion for summary judgment. The same approach was adopted in *Amsler v. A.H. Robins,* B–82–3295 (D.Md., Oct. 19, 1984) (Black, J.), in which plaintiff knew in 1975 that her use of an IUD was a possible cause of her pelvic inflammatory disease. But the Court decided that it was possible that she did not know of the wrong until she heard of others who were suing the manufacturer, which was seven years later but within three years of filing the action. Pelvic inflammatory disease could have occurred without the use of any IUD or perhaps with the use of a non-defective IUD. In absence of some indication that there was a wrongdoing, a prudent person may not find it reasonable to aggressively inquire about possible product defects.

This approach is most sensible not only because it is fair to potential claimants in tort actions but also because the alternative approach would encourage the frivolous filing of suits. Not every injury is tortious. Just as in medical malpractice cases, where every bad result is not evidence of negligence, so too with drugs and medical devices: every side effect or adverse reaction does not indicate either that the product is unreasonable dangerous and defective, or that the manufacturer was negligent in the promotion and sale of its product. To hold that knowledge of an injury from a medical device is, as a matter of law, evidence that a cause of action accrued would encourage the filing of frivolous actions. It would teach society that the appropriate reaction to medical disability is to find fault and file suit. Thus, this result is also appropriate from the defendant's point of view, and once a potential claimant learns of a cause of action, the

statute of limitations is in full force and the filing of state claims will not be tolerated.

In the instant case, both actions were filed on December 12, 1984. Plaintiff Perlov originally received her Copper–7 IUD in February, 1975 and had it removed because of bloating and pain the following month. Two years later, in March, 1977, she underwent surgery for pelvic inflammatory disease and shortly thereafter her doctor told her that it was likely that the IUD was a causal factor. There is a factual dispute about whether Perlov concluded that the product may have been defective after speaking with her doctor in 1977 or only upon seeing an advertisement in the newspaper in December, 1983.

The facts are similar for Sauer, who had a series of three Copper–7 IUD's inserted and removed due to infections between 1977 and 1980. In December, 1981, she had a hysterectomy. Although it seems clear that she understood that there was a connection between her medical problems and the IUD, she claims that she thought the IUD was no more than an irritant and it did not occur to her that the IUD may have been defective. Like Perlov, Sauer insists that it was not until she saw articles and an advertisement at a later date that she realized that she may have been wronged.

■ On summary judgment, the moving party has the burden of proving that the material facts are not in dispute, and that there can be no reasonable dispute as to the legal conclusions to be drawn from these facts. *Adickes v. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Morrison v. Nissan Co., Ltd.*, 601 F.2d 139, 141 (4th Cir.1979); *Rockstroh v. A.H. Robins*, 602 F.Supp. at 1264. In deciding the motion, the Court must view the facts and the inferences from those facts in the light most favorable to the non-moving party. *Adickes v. Kress & Co.*, 398 U.S. at 157, 90 S.Ct at 1608. This is a case in which, due to complex medical and scientific factors, it may be unreasonable to expect plaintiffs, who had no special background or skill in the area,

to understand or appreciate that an actionable harm may have been committed. *Cf. Waldman v. Rohrbaugh*, 241 Md. 137, 145, 215 A.2d 825 (1965); *Jones v. Sugar*, 18 Md.App. 99, 305 A.2d 219 (1973) (special background and skill may be considered). Although the basic facts are not disputed, there is disagreement as to whether one can infer that Perlov and Sauer should have known that the products may have been defective, or instead that plaintiffs were reasonable in assuming that the infections were a result of "particular body chemistry" or "a chance situation." (Saul Perlov Deposition, Doc. 10, ex. C). Because of this question, defendant's motion for summary judgment must be denied.

■ The third motion to be resolved is defendant's request for exclusion of expert testimony, and for sanctions and costs pursuant to Rule 37, Fed.R.Civ.P. Defendant asserts that three of plaintiffs' designated experts have failed to cooperate during depositions. This Court will not consider this motion, however, because the moving party has failed to comply with local Rule 34, which requires moving counsel to "advise the Court in writing that after personal consultation and sincere attempts to resolve differences (relating to discovery matters) with opposing counsel they are unable to reach an accord." Rule 34, Rules of United States District Court (Md.). It appears that parties have made no effort to resolve these differences among themselves before involving the Court, and this is contrary to the expectations of this judicial district. Furthermore, the proper procedure under Rule 37, Fed.R.Civ.P., is to apply to this Court for an order compelling deponents to respond to questions, rather than immediately request that testimony be excluded. The Rule 37 procedures provide appropriate notice to all parties and are more conducive to promoting a fair trial in which both parties have access to the relevant information as well as the opportunity to fully present their cases. Therefore, defendant's motion to exclude expert testimony and for sanctions and costs is denied.