Charles WAGNER, et al.

v.

ALLIED CHEMICAL CORP., et al.

Donald MORGAN, et al.

v.

ALLIED CHEMICAL CORP., et al.

Civ. Nos. Y–84–59, Y–84–2354.

United States District Court,
D. Maryland.

Nov. 29, 1985.

Roy L. Mason, Baltimore, Md., for plaintiffs.

George D. Solter, Baltimore, Md., Frank J. Eisenhart, Jr., Philadelphia, Pa., and Rudolph Rose, Baltimore, Md., for defendants.

## MEMORANDUM

JOSEPH H. YOUNG, District Judge.

This tort action, brought by 26 former employees of a pesticide plant and 13 of their spouses, seeks damages for injuries as a result of exposure to certain chemicals. The employee-plaintiffs brought this action against their employer, Allied, and 14 other companies which allegedly supplied chemicals to the plant (hereinafter "supplier defendants"). Plaintiffs filed the action in two groups: the Wagner plaintiffs filed January 10, 1984, and the Morgan plaintiffs filed March 8, 1984; the cases have been consolidated. Supplier defendants and Allied have filed motions for partial summary judgment against 12 plaintiffs and their spouses, asserting that their claims are barred by the statute of limitations, and for summary judgment on the basis of collateral estoppel because plaintiffs have already pursued a remedy under the Workmen's Compensation Act. Finally, supplier defendants seek sanctions under Rule 11. At this time, the Court will rule on the Rule 11 and statute of limitations motions.

## I. *Statute of Limitations*

There is no question that the appropriate statute of limitations to apply is

three years for a civil action. Md.Cts. & Jud.Proc.Code Ann. § 5–101; *Harig v. Johns-Manville Products*, 284 Md. 70, 73, 394 A.2d 299 (1978). Although ordinarily the statute begins to run at the time of the injury, in some cases—such as with latent diseases—the plaintiff may not be aware of the injury until well after it actually occurs. Where injuries are inherently unknowable because the manifestations or the cause of the injury were in some way hidden from the victim, the cause of action accrues when a claimant "discovers, or through the exercise of reasonable care and diligence should have discovered, the nature and cause of (the) disability or impairment." *Harig*, 284 Md. at 71, 394 A.2d 299; *Accord Lutheran Hospital of Maryland v. Levy*, 60 Md.App. 227, 233, 482 A.2d 23 (1985) (cause of action accrues when the claimant actually knew or reasonably should have known of the wrong). This "discovery rule" was adopted to mitigate the harshness of the statute of limitations for victims who cannot be charged with slumbering on their rights, *Poffenberger v. Risser*, 290 Md. 631, 431 A.2d 677 (1981), while still furthering the overall purpose of the statute of limitation, which is to ensure fairness to the defendant by encouraging the prompt filing of actions. Such promptness assures that no ancient obligations remain and that claims can be heard before "evidence has been lost, memories have faded, and witnesses have disappeared." *Order of R.R. Telegraphers v. Railway Express Agency*, 321 U.S. 342, 349, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944); *Harig*, 284 Md. at 76, 394 A.2d 299.

■ Under the discovery rule, the court determines when the cause of action accrues, *Rockstroh v. A.H. Robins Co.*, 602 F.Supp. 1259, 1264 (1985), which is the time that triggers the running of the statute of limitations. This decision is made on the basis of the plaintiff's

actual knowledge—that is express cognition, or awareness implied from knowl-

edge of circumstances which ought to have put a person of ordinary prudence on inquiry (thus charging the individual) with notice of all facts which such an investigation would in all probability have disclosed if it had been properly pursued.

*Poffenberger*, 290 Md. at 637, 431 A.2d 677; *Lutheran Hospital*, 60 Md.App. at 233, 482 A.2d 23.

In the present case, the discovery rule should apply. Plaintiffs allege that the manifestations of their injuries occurred for the most part after their employment with Allied was terminated, making it less likely that they should immediately suspect a causal connection. Even where the injuries were apparent while plaintiffs were still working for Allied, the injuries appeared gradually over a period of time and were of a type which is not clearly related to chemical exposure. They had no way of knowing there may be a causal connection and in fact defendants continue to deny that there was such a connection. Thus, plaintiff's causes of action accrued when they discovered, or through the exercise of reasonable care and diligence should have discovered, the nature and cause of the disability.

■ Plaintiffs were definitely "put upon inquiry" about a possible causal connection between their illnesses and the chemical exposure when they consulted attorneys or medical experts who expressly told them of the possible relationship. For most plaintiffs, this occurred in early 1981 when they consulted an attorney and certain doctors within three years of filing the action. Prior consultations with medical experts not only failed to reveal a causal connection, but also alleviated some plaintiffs' suspicions of a causal connection when, according to some testimony, doctors employed by Allied specifically advised that the disabilities were unrelated to the chemicals.[1] Additionally, plaintiffs had no medical ex-

1. An alternative to mitigating the harshness of

the statute of limitations by utilizing the dis-

pertise upon which to base their own conclusions about a causal relationship. Thus, certain plaintiffs were not put upon inquiry by express knowledge of the wrong until a time within three years of filing of their claims. *Cf. Lutheran Hospital,* 60 Md. App. at 236, 482 A.2d 23 (plaintiff was put upon inquiry when doctor asked her who had told her to walk on her ankle, leading her to believe that something wrong had been done); *Jones v. Sugar,* 18 Md.App. 99, 305 A.2d 219 (1973) (because of medical expertise, nurse should have known that she may have been wronged).

█ It is clear from the pleadings, depositions, and answers to interrogatories, however, that several of the plaintiffs should have investigated the nature and cause of their disability more than three years before filing an action against Allied. Plaintiffs Jimmie Hatfield, Jackson McGee, Donald Morgan, and Bernice Morgan all were present at the "Morgan party," which was either on December 27, 1980 or January 3, 1981.[2] This was more than three years before the actions were filed. At this party, there was a discussion of the common disabilities which past employees of Allied seemed to share. This led the past employees to make the crucial link between their current disabilities and their prior exposure to chemicals while working at Allied. Newspaper clippings which were relevant to the conversation and which the party hosts had been collecting were viewed and discussed at that time. There is every indication that Hatfield, McGee, Donald Morgan, and Bernice Morgan were "put upon inquiry" at the time of conversa-

tion, so at that time their causes of action accrued. Because they did not file actions within three years, their claims are barred by the statute of limitations.

The remaining plaintiffs who are named in the motion for summary judgment,[3] cannot be said to have slumbered on their rights. Most of the plaintiffs did have a general awareness that there had been another lawsuit brought by a past employee against Allied, but there is no indication that plaintiffs knew anything of the inquiry which was the subject of the suit.

Defendants insist that the claims of Doris Horseman and Katherine Savitski should be barred because they consulted with a lawyer about bringing an action against Allied in 1977, and decided not to pursue it. Although contact with a lawyer ordinarily is a reliable sign that a victim has already started investigating a potential claim, *Lutheran Hospital,* 60 Md.App. at 236, 482 A.2d 23, such an inference cannot apply in this case. It is not clear whether in 1977 Horseman and Savitski were investigating or even knew about the same injuries which are the basis of this action. The deposition transcript indicates that the severe symptoms of which Horseman and Savitski now complain began shortly before this action was filed, and Horseman explained that in 1977 she decided not to pursue a claim because she was not feeling bad. Plaintiff David Thompson also had prior contact with a lawyer, but according to his deposition the lawyer had contacted Thompson, who was not interested and refused to have any substantive discussion with the lawyer. Furthermore, it is not

covery rule in this case would be to toll the statute of limitations pursuant to Md.Cts. & Jud. Proc.Code Ann. § 5–203, upon a showing that a party is kept in ignorance of a cause of action by the fraud of an adverse party. But because the discovery of the wrong triggers the running of the statute under both rules and the "discovery rule" does apply in this case, we need not reach the question under § 5–203 of whether there has been a fraud perpetrated.

**2.** According to several depositions, it is possible that several additional plaintiffs were at the

Morgan party. By defendants' own admission, however, these facts are in dispute and it is impossible to conclude at this time that additional plaintiffs were at the party.

**3.** These plaintiffs are John and Kathryn Gruss, Doris and Marvin Horseman, Thomas and Linda Muir, David and Agnes Thompson, Charles Cookson, Mary Clarke, Lawrence and Linda Morgan, and Katherine Savitski.

clear that Thompson's disabilities had fully manifested themselves at that early point in time. Thus contact with a lawyer is not proof that the inquiry had begun in this case.

Defendants also contend that plaintiffs Mary Clarke and Charles Cookson were put upon inquiry by earlier treatment for disabilities that they had suffered. Those disabilities, for which Clarke was hospitalized and Cookson filed a workmen's compensation claim were related to stomach and breathing problems, and were of an entirely different nature than most of the current claims which involve limbs and extremities.

■ In short, as to the remaining plaintiffs who are named in the motion for summary judgment there is a dispute not only as to the facts surrounding the nature of the plaintiffs' awareness of a link between their disabilities and chemical exposures, but also as to the inferences to draw from particular incidents and conversations. On summary judgment, the moving party has the burden of proving that the material facts are not in dispute, and that there can be no reasonable dispute as to the legal conclusions to be drawn from these facts. *Adickes v. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Morrison v. Nissan Co., Ltd.*, 601 F.2d 139, 141 (4th Cir.1979); *Rockstroh v. A.H. Robins*, 602 F.Supp. 1259, 1264 (D.Md.1985). In deciding the motion, the Court must view the facts and the inferences from those facts in the light most favorable to the non-moving party. *Adickes v. Kress & Co.*, 398 U.S. at 157, 90 S.Ct. at 1608. Although one could conceivably imply from the circumstances that plaintiffs might have been put upon inquiry at an earlier point in time, there is no conclusive evidence that plaintiffs had the benefit of important signals such as advice from a medical expert, or comparisons of symptoms with co-worker. It cannot be said that they were put on inquiry until a co-worker recommended that they see an at-

torney or decided on their own to see an attorney. This was within the three year period. Thus, as to plaintiffs Hatfield, McGee, and Donald and Bernice Morgan, defendants' motion for partial summary judgment on the basis of statute of limitations is granted. For the remaining plaintiffs, summary judgment is denied. Obviously, as to the contested facts, trial testimony may make even more clear the knowledge, or lack of knowledge, of plaintiffs prior awareness of a connection between work and chemicals.

## II. Rule 11

In supplier defendants' Rule 11 motion for dismissal and sanctions, they assert that plaintiffs had no basis well grounded in fact for believing that their claimed illnesses were caused by exposure to chemicals during their employment at Allied. Under Rule 11, an attorney has an affirmative obligation to make a reasonable inquiry before concluding that the complaint is well grounded in fact and is warranted by existing law. The purpose of this requirement is to "discourage dilatory or abusive tactics and help to streamline the litigation process by lessening frivolous claims or defenses.... What constitutes a reasonable inquiry may depend on such factors as how much time for investigation was available to the signer; whether he had to rely on a client for information as to the facts ... or whether he depended on forwarding counsel or another member of the bar." Fed.R.Civ.P. 11, Advisory Committee Note.

■ It appears that plaintiffs' attorney did conduct an inquiry which falls within the range of reasonableness prior to filing this action. Although defendants point out serious factual weaknesses with several of the claims, plaintiffs' attorney did consult with an expert, talked to claimants, and received an oral opinion from a doctor who examined most of the claimants, prior to filing this action. This inquiry is sufficient

to avert sanctions under Rule 11. If defendants have concluded that there is insufficient evidence to maintain a claim and no genuine issue as to any material fact exists, then the correct procedure would be to move for summary judgment pursuant to Rule 56, Fed.R.Civ.P., rather than seek dismissal through Rule 11, as they do in this motion. Therefore, defendants' motion for sanctions under Rule 11 is denied, and plaintiffs' countermotion for sanctions is denied.