## HOWARD W. POFFENBERGER, JR. *v.* DONALD E. RISSER ET AL.

[No. 109, September Term, 1980.]

*Decided July 9, 1981.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Russell R. Marks,* with whom were *Kenneth J. Mackley* and *Mackley, Gilbert & Marks* on the brief, for appellant.

*Conrad W. Varner* for appellees.

DIGGES, J., delivered the opinion of the Court. MURPHY, C. J., and RODOWSKY, J., concur in the result. RODOWSKY, J., filed a concurring opinion at page 638 *infra,* in which MURPHY, C. J., joins.

After the Court of Special Appeals affirmed the summary judgment entered by the Circuit Court for Washington County in favor of respondent-defendant Donald E. Risser, we granted certiorari to consider the propriety of the trial court's determination that this suit instituted by petitioner Howard W. Poffenberger was barred by limitations.[1] For reasons to be elucidated presently, we conclude that since there are factual disputes which must be resolved before this litigation may be properly concluded, vacation of the summary judgment is required.

There being no supporting or opposing affidavits relevant to the issues before us, we extract from the pleadings, attached exhibits, deposition and admissions the following: Howard W. Poffenberger, Jr., purchased in the summer of 1972 an unimproved lot in Brightwood Acres, a planned development located in Hagerstown, Maryland. The prop-

---

[1]. In addition to Donald E. Risser, two business entities (apparently either owned or controlled by him) were named as defendants and are respondents here. However, in the interest of simplicity we will write as though Mr. Risser were the sole respondent.

The opinion and judgment of the intermediate appellate court, rendered by the majority of a divided three-judge panel acting for that court, is reported as Poffenberger v. Risser, 46 Md. App. 600, 421 A.2d 90 (1980).

erty was acquired subject to a number of restrictions that were enumerated on the recorded plat of the subdivision, one of which directed that "no portion of any building except open porches and steps shall be located within 15 feet of any other side lot line." Following his purchase, owner Poffenberger allegedly contracted with builder Risser for construction of a home that would comply with all relevant restrictions and which was to be situated in the center of the lot. Fabrication of the dwelling was completed in December, 1972, and the Poffenberger family began their occupancy sometime during the following month. The home was erected in a new section of Brightwood Acres when no structures of any type were located on the adjoining several lots. In March, 1976, the parcel to the south of the Poffenberger property was surveyed preparatory to building a house there, and the petitioner became aware that his home had been located so as to violate the fifteen foot side lot set back requirement; it was fifty-one feet from the north side lot line, but only eight feet from the south line. Reacting to this discovery, Mr. Poffenberger initiated the present suit by filing a multi-count declaration in the Circuit Court for Washington County against builder Risser alleging both breach of contract and negligence, to which, in addition to a general denial, the respondent filed a special plea that the action was barred by limitations.

The statute relied on by Mr. Risser in support of his limitations plea is Maryland Code (1974, 1980 Repl. Vol.), section 5-101 of the Courts Article, which reads:

> A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced.

There being an absence of statutory direction, the question when an action accrues is left to judicial determination. *Harig v. Johns-Manville Products,* 284 Md. 70, 75, 394 A.2d 299, 302 (1978). Thus, when the statutory bar of limitations is made an issue, it becomes necessary to judicially determine the date the suit accrued because that time triggers the

running of the statute. Depending upon the nature of the assertions being made with respect to the limitations plea, this determination may be solely one of law, solely one of fact or one of law and fact. In this case, builder Risser fixes the accrual date as the time when construction of the home began, or at the latest, when the Poffenberger family took up residence in it; either date would result in section 5-101 barring this suit. On the other hand, owner Poffenberger contends (as he must in order not to be time barred) that because of the latent nature of the wrong, his action did not accrue until he knew or should have known of its existence — that is, when the next door lot was surveyed a little more than a year before this suit was instituted.

In Maryland, the general rule heretofore has been stated to be that the running of limitations against a right or cause of action is triggered upon occurrence of the alleged wrong, and not when it is discovered. *Leonhart v. Atkinson,* 265 Md. 219, 223, 289 A.2d 1, 3-4 (1972). However, the harshness of this general rule was readily observed and has in this State led to the creation of both legislative and judicial exceptions to it — one among them, the "discovery rule." [2] Although perhaps timidly, this Court first applied the discovery rule in Maryland (and some suggest was the first to embrace the concept in the nation, *see* Note, *The Statute of Limitations in Actions for Undiscovered Malpractice,* 12 Wyo. L. J. 30, 34 (1957)), nearly three quarters of a century ago, when in *Hahn v. Claybrook,* 130 Md. 179, 100 A. 83 (1917), it was announced that in medical malpractice cases the cause of action accrues when the wrong is discovered or when with

---

**2.** Among the departures from the general rule legislatively provided for are Code (1974, 1980 Repl. Vol.), Courts Article, §§ 5-102 (c) (inapplicability to specialties taken for use of the State), 5-104 (b) (suit by State on public officer's bond), 5-201 (pertaining to persons under disability) and 5-203 (ignorance of cause of action induced by fraud). In addition, the legislature may regulate the application of the discovery rule; it did so in relation to actions against architects, professional engineers or contractors for damages resulting from the defective or unsafe condition of improvements to real property by enacting § 5-108 of the Courts Article (1974, 1980 Repl. Vol. and its 1980 Cum. Supp.). Though this Court has rejected the "maturation of harm" doctrine, Leonhart v. Atkinson, 265 Md. 219, 224, 289 A.2d 1, 4 (1972), we have applied both the continuation of events theory and the discovery rule, Harig v. Johns-Manville Products, 284 Md. 70, 76, 394 A.2d 299, 303 (1978).

due diligence it should have been discovered. Over the subsequent decades, the rule has spread beyond application solely to the learned professions so as to embrace malpractice in all callings encompassed within the continuously expanding concept of "profession." *See Harig v. Johns-Manville Products, supra* at 73-74, 394 A.2d at 304, and *Leonhart v. Atkinson, supra* at 224, 289 A.2d at 4, and cases cited in each. Thus, since "the 'discovery rule' has been consistently extended so that now it is clearly applicable to all cases involving professional malpractice," *id.*, one of the principal inquiries focuses on whether the particular occupation involved in the case constitutes a "profession."

Reasoning that "[l]ike the victim of undiscoverable malpractice a person incurring disease years after exposure cannot have known of the existence of the tort until some injury manifests itself," this Court just three years ago in *Harig v. Johns-Manville Products, supra* at 80, 394 A.2d at 305, extended the discovery rule beyond malpractice actions to suits involving latent disease. In doing so, we noted that a growing number of our sister states had recognized that, in many cases not involving professional malpractice, "plaintiffs may, in appropriate circumstances, 'be blamelessly ignorant' of the fact that a tort has occurred and thus, ought not be charged with slumbering on rights they were unable to ascertain." *Id.* at 83, 394 A.2d at 306. Moreover, *Harig* does not represent the first time we have applied the discovery rule beyond cases involving professional malpractice, for we have previously utilized the rule in a case involving faulty construction. See *Callahan v. Clemens,* 184 Md. 520, 41 A.2d 473 (1945). See also *Steelworkers Holding v. Menefee,* 255 Md. 440, 258 A.2d 177 (1969); *Mettee v. Boone,* 251 Md. 332, 247 A.2d 390 (1968). So, as we noted a little more than a year ago in again utilizing the discovery rule in a non-professional malpractice context, "fairness to a plaintiff who has not slept on his rights justifies exceptions to [the] general rule." *Sears, Roebuck & Co. v. Ulman,* 287 Md. 397, 401, 412 A.2d 1240, 1242 (1980) (defamation action for false credit report). *Cf., Goldstein v. Potomac Elec. Power Co.,* 285 Md. 673, 404 A.2d 1064 (1979).

Furthermore, in *Harig* we suggested that "[a]voiding possible injustice in such cases outweighs the desire for repose and administrative expediency, which are the primary underpinnings of the limitations statute." *Harig,* 284 Md. at 80, 394 A.2d at 305.

Having already broken the barrier confining the discovery principle to professional malpractice, and sensing no valid reason why that rule's sweep should not be applied to prevent an injustice in other types of cases, we now hold the discovery rule to be applicable generally in all actions and the cause of action accrues when the claimant in fact knew or reasonably should have known of the wrong.

In the case before us the respondent seems to concede, as a reading of the record clearly indicates he should, that unless constructive notice gained through the plats and deeds recorded among the land records of Washington County precludes a finding that the wrong was inherently unknowable at the time the building of the house commenced (and thus satisfied the requisite "known or should have known" requirement), there exists sufficient factual controversy to prevent summary judgment. It follows, on the other hand, that if constructive notice provides sufficient discovery to trigger the running of the time bar enactment, as the respondent argues, summary judgment was properly entered in this case.

This issue posed by builder Risser causes us to focus on the nature of the knowledge necessary, under the discovery rule, to start the running of the limitations period. With respect to the acquisition of knowledge, Judge McSherry in speaking for this Court nearly a century ago said:

> Notice is of two kinds — actual and constructive. Actual notice may be either express or implied. If the one, it is established by direct evidence, if the other, by the proof of circumstances from which it is inferable as a fact. Constructive notice is, on the other hand, always a presumption of law. Express notice embraces not only knowledge, but also that which is communicated by direct information,

either written or oral, from those who are cognizant of the fact communicated. Implied notice, which is equally actual notice, arises where the party to be charged is shown to have had knowledge of such facts and circumstances as would lead him, by the exercise of due diligence, to a knowledge of the principal fact. . . . It is simply circumstantial evidence from which notice may be inferred. It differs from constructive notice, with which it is frequently confounded, and which it greatly resembles, in respect to the character of the inference upon which it rests; constructive notice being the creature of positive law, resting upon strictly legal presumptions which are not allowed to be controverted, whilst implied notice arises from inference of *fact.* [*Baltimore v. Whittington,* 78 Md. 231, 235-36, 27 A. 984, 985 (1893). (Authorities omitted).]

As the knowledge imputed by the just defined constructive notice, if deemed to be sufficient to activate the running of limitations, would recreate the very inequity the discovery rule was designed to eradicate, we now hold this type of exposure does not constitute the requisite knowledge within the meaning of the rule. Affirmatively speaking, we determine the discovery rule contemplates actual knowledge — that is express cognition, or awareness implied from

knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry [thus, charging the individual] with notice of all facts which such an investigation would in all probability have disclosed if it had been properly pursued. *Baynard v. Norris,* 5 Gill. 468, 483, 46 Am.Dec. 647; *Higgins v. Lodge,* 68 Md. 229, 235, 11 A. 846, 6 Am. St. Rep. 437. In other words, a purchaser cannot fail to investigate when the propriety of the investigation is naturally suggested by circumstances known to him; and if he neglects to make such inquiry, he will be held guilty of bad faith and must suffer from his neglect. [*Fertitta v. Bay Shore*

*Dev. Corp.,* 252 Md. 393, 402, 250 A.2d 69, 75 (1969), quoting *Blondell v. Turover,* 195 Md. 251, 257, 72 A.2d 697, 699 (1950).]

As earlier indicated, the record seems to establish no contest as to the fact that the respondent lacked express knowledge with respect to the side lot line infringement until the time the adjoining lot was surveyed. However, there is reflected a factual dispute regarding whether, sometime prior to that survey, the petitioner possessed knowledge from which actual notice may be inferred. Consequently, the granting of summary judgment was error and its entry must be reversed.

> *Judgment of the Court of Special Appeals reversed and case remanded to that court with instructions to reverse the judgment of the Circuit Court for Washington County and remand · for further proceedings.*
> *Costs to be paid by respondent.*

*Rodowsky, J., concurring:*

I agree that the discovery rule applies in this case and that constructive notice from the land records, in and of itself, does not constitute the requisite knowledge of circumstances which ought to have put the plaintiff on inquiry. However, I am unable to join in the reasoning by which the majority reaches the conclusion on the first issue.

Here on Risser's motion for summary judgment the facts are that he undertook to construct the Poffenberger home in the center of the lot and in compliance with all relevant restrictions, including the side yard set back. In *Mattingly v. Hopkins,* 254 Md. 88, 253 A.2d 904 (1969) the limitations analysis was in terms of the discovery rule where a survey crew employed by civil engineers failed to mark out subdivision lots on the ground in accordance with the record plat.

We also analyzed the limitations question in a claim for faulty construction under the discovery rule in *Steelworkers Holding Co. v. Menefee,* 255 Md. 440, 258 A.2d 177 (1969). *See also Callahan v. Clemens,* 184 Md. 520, 41 A.2d 473 (1945). It is on the basis of these precedents that I would apply the discovery rule in this case.

The majority holds, in essence, that "[a] civil action at law," governed by the three years limitation provision of Md. Code (1974, 1980 Repl. Vol.), § 5-101 of the Courts and Judicial Proceedings Article, "accrues" when the claimant in fact knew or reasonably should have known of the wrong. It is much the same as if knowledge, or the reasonable means of knowledge, on the part of the plaintiff were made an additional element of whatever cause of action is presented under the statute. Previously this Court approached application of the discovery rule on a case by case basis. The majority today has prescinded from these rulings and announced a principle of general application. This is a major step which is unnecessary to the decision of the present case.

I cannot make the majority's generalization that this sweeping expansion of the discovery rule will prevent an injustice in the enlarged class of cases. Because a claim can survive limitations only under an expanded discovery rule is no greater indication that it has legal merit than is the assertion of a limitations defense an indication that there is no defense to the merits. Further, and unlike the majority, I do sense a valid reason why this case should not be the vehicle for making the discovery rule's sweep generally applicable. In certain types of claims the operation of a pure and unrestricted discovery rule under our prior decisions has been limited by the General Assembly. As to health care providers, the time limit for filing a claim is now basically 5 years from the time of injury under § 5-109 of the Courts Article. The time limit is 10 years "after the date the entire improvement first became available for its intended use," as to certain claims against "any architect, professional engineer or contractor" under Code (1980 Supp.), § 5-108 of the Courts Article.

These statutes are a response to some of the problems presented by the discovery rule. It has effects on the cost of defense, on the availability and cost of liability insurance, and on the ability to present proof of defense of liability. Further, this expanded discovery rule announced today apparently applies, at least as to all causes of action subject to the general three year limitations statute, both in actions *ex delicto* and *ex contractu.* Yet, in one of the most common types of contracts, the contract for sale, the Uniform Commercial Code's special four years limitation provision adopts a contrary policy. The "cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." Md. Code (1975), § 2-725 (2) of the Commercial Law Article. A further complication of today's broad pronouncement is its relationship to § 5-203 of the Courts Article. The fact that the failure to discover the alleged wrong was due in no way to the defendant's fraud will seemingly be immaterial in many, if not most, civil actions at law.

Since every legal relationship in society gives rise to rights and obligations, and thereby potential litigation, it is impossible to foresee the types, volumes and merits of claims which will hereafter present the assertion that the claimant reasonably did not know of the facts comprising each of the traditionally constituent elements of the alleged wrong within three years after they occurred. Rather than predict that the principle announced today will be dispositive of limitations issues in all of these unknown cases in a manner which is just to the parties and society, I would simply decide only that which it is necessary to decide in the instant case. That decision can be made by analogy to the facts presented here from the rules applied in our prior cases. Particularly in light of the legislative limitations placed in certain situations on a judicially unrestricted discovery rule, I would not pronounce the discovery rule to be a general principle and accordingly would not decide this case deductively from it.

Chief Judge Murphy has authorized me to state that he joins in the views expressed in this concurring opinion.