**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

SOLOMON S. PILZ, and his wife;
MARIE ANN LANDGREBE PILZ,
Plaintiffs-Appellants,

v.
                                            No. 96-2243
FEDERAL DEPOSIT INSURANCE
CORPORATION, as Receiver for
Perpetual Savings Bank, F.S.B.;
SENTINEL TITLE CORPORATION,
Defendants-Appellees.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Marvin J. Garbis, District Judge.
(CA-95-3808-MJG)

Argued: June 2, 1997

Decided: July 1, 1997

Before RUSSELL and HAMILTON, Circuit Judges, and
HOWARD, United States District Judge for the
Eastern District of North Carolina,
sitting by designation.

_____

Vacated and remanded by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Thomas Joseph Dolina, BODIE, NAGLE, DOLINA,
SMITH & HOBBS, P.A., Towson, Maryland, for Appellants. Law-

rence Hipson Richmond, FEDERAL DEPOSIT INSURANCE COR-
PORATION, Washington, D.C., for Appellees. **ON BRIEF:** Kelly A.
Kormer, BODIE, NAGLE, DOLINA, SMITH & HOBBS, P.A., Tow-
son, Maryland, for Appellants. Ann S. DuRoss, Assistant General
Counsel, Colleen B. Bombardier, Senior Counsel, Marta W. Berkley,
FEDERAL DEPOSIT INSURANCE CORPORATION, Washington,
D.C., for Appellee FDIC; Deborah M. Whelihan, JORDAN, COYNE
& SAVITS, Washington, D.C., for Appellee Sentinel Title.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Plaintiffs Solomon and Marie Pilz appeal the district court's Fed.
R. Civ. P. 12(b)(6) dismissal of their claims against the
defendants,
the Federal Deposit Insurance Corporation (FDIC) (which had been
substituted for Perpetual Savings Bank, F.S.B. (Perpetual))**1** and
Sen-
tinel Title Corporation (Sentinel). The sole issue presented by
this
appeal is whether the Pilzes' claims against the FDIC and Sentinel,
as alleged in their complaint, are barred by Maryland's general
three-
year statute of limitations. See Md. Code Ann., Cts. & Jud. P. § 5-
101. The district court held that the claims were barred because
the
Pilzes had "actual notice" of their claims against the FDIC and
Senti-

_____
**1** Because Perpetual was in receivership at the time the Pilzes
filed their
complaint in Maryland state court, the Resolution Trust Company
(RTC)
was substituted for Perpetual as a defendant pursuant to the
Financial
Institution Reform, Recovery, and Enforcement Act of 1989 (FIRREA),
Pub. L. No. 101-73, 103 Stat. 183 (codified as amended in scattered
sec-
tions of 12 and 18 U.S.C.). Accordingly, the RTC removed the action
to
the United States District Court for the District of Maryland
pursuant to
12 U.S.C. § 1819(b)(2)(A) and 28 U.S.C. § 1441(b). After the RTC
was
dissolved, the FDIC was substituted as the defendant in Perpetual's

place. <u>See</u> 12 U.S.C. § 1441a(m)(2).

nel more than three years before filing suit and thus, the district court dismissed the complaint pursuant to Fed. R. Civ. P. 12(b)(6). Because the district court erred when it determined that, as a matter of law, the Pilzes had actual notice of their claims against the FDIC and Sentinel more than three years before they filed their complaint in state court, we vacate the district court's dismissal of the Pilzes' claims and remand the case to the district court for further proceedings consistent with this opinion.

I.

In their complaint, the Pilzes alleged that in early January 1992 they met with a representative of Perpetual in order to refinance their house, which is located at 6415 Dry Barley Lane, Columbia, Maryland (the Property). During that meeting, the Pilzes gave Perpetual's representatives an unrecorded deed to the Property dated November 7, 1991, which would have transferred ownership in the Property from Solomon Pilz, Marie Pilz, and Charles Osterwald as joint tenants to Solomon Pilz and Marie Pilz as joint tenants. At the meeting, Perpetual told the Pilzes that they would be able to refinance the Property and assured them that, since they were married, a new deed would be prepared by Sentinel which would title the Property in them as "husband and wife" or tenants by the entireties. See (J.A. 7).

During the month of January 1992, the Pilzes received several documents in preparation for the loan closing which was scheduled for February 3, 1992. These documents included a title insurance binder, dated January 29, 1992, wherein Sentinel represented to Perpetual that the Property was to be titled in the Pilzes as "husband and wife."[2] See id.

At the February 3, 1992 closing, the Pilzes received the usual loan closing documents relevant to the refinancing of their mortgage. The Pilzes also executed the deed, as prepared by Sentinel, which vested title to the Property in them as joint tenants and not as tenants by the

_____

**2** It is not clear from the complaint whether the Pilzes were given access to the title insurance binder at or before the February 3, 1992 clos-
ing. However, under normal circumstances the title insurance binder would have been available to them at closing.

entireties. However, in their complaint, the Pilzes assert that they
believed the deed prepared by Sentinel and executed on February 3,
1992 conveyed the Property to them as "husband and wife" or tenants
by the entireties, consistent with Perpetual and Sentinel's assurances.
They also assert that none of the above-mentioned documents gave
them any reason to suspect otherwise. Further, the Pilzes claim they
did not know the legal distinctions between a husband and wife own-
ing property as joint tenants as opposed to their owning property as
tenants by the entireties.

Subsequently, in 1994, Solomon Pilz had a judgment recorded
against him for $63,000. As a result of the fact that the Property was
deeded to the Pilzes as joint tenants, rather than as tenants by the
entireties, the judgment creditor allegedly threatened to enforce his
judgment against Solomon Pilz by attaching his one-half interest in
the Property. In order to keep the judgment creditor from securing a
lien on Solomon Pilz's one-half interest in the Property, the Pilzes
secured a loan from relatives to satisfy the $63,000 judgment. Due to
various other costs, including interest and attorneys' fees necessitated
by the loan from relatives, the Pilzes claim they have suffered
$81,044 in damages allegedly due to Perpetual and Sentinel's profes-
sional negligence, negligent misrepresentation and breach of an
express warranty. In sum, the Pilzes claim that they did not know
until the $63,000 judgment was entered against Solomon Pilz that
Perpetual and Sentinel had not performed as promised and thus, they
did not know until some point in 1994 that the Property was deeded
to them with the legal significance of a joint tenancy, rather than a
tenancy by the entireties.

On the basis of the facts alleged above, the Pilzes filed a complaint
against Perpetual and Sentinel in the Circuit Court for Baltimore
County, Maryland on November 15, 1995. In that complaint, the
Pilzes raised various claims, including professional negligence, negli-
gent misrepresentation, and breach of an express warranty, all of
which revolve around Perpetual and Sentinel's alleged failure to fur-
nish a deed conveying the Property to the Pilzes as tenants by the
entireties or "husband and wife." After the matter had been removed

to federal district court and the FDIC was substituted for Perpetual, the FDIC, without answering the complaint, filed a motion to dismiss the Pilzes' complaint asserting that: (1) the district court lacked juris-

4

diction over the Pilzes' claims because they failed to exhaust their
administrative remedies as required by 12 U.S.C. § 1821(d), and (2) the claims stated in the complaint were barred by Maryland's general three-year statute of limitations, see Md. Code Ann., Cts. & Jud. P. § 5-101.**3** Thereafter, the district court stayed the matter so the Pilzes could pursue their administrative remedies against the FDIC. Once the Pilzes had exhausted their claims as required by 12 U.S.C. § 1821(d)(5), and the district court had lifted the stay, the district court reviewed the Pilzes' claims de novo, see Brady Dev. Co., Inc. v. Resolution Trust Co., 14 F.3d 998, 1003 (4th Cir. 1994).

After reviewing the merits of the Pilzes' complaint, the district court dismissed the Pilzes' claims against both the FDIC and Sentinel pursuant to Fed. R. Civ. P. 12(b)(6), concluding that the Pilzes knew or should have known they had claims against the FDIC and Sentinel which arose more than three years before November 15, 1995.**4** Specifically, the district court reasoned that because: (1) the Pilzes knew that the November 7, 1991 unrecorded deed provided for the conveyance of the Property to them as joint tenants rather than tenants by the entireties, and (2) the February 3, 1992 deed actually titled the Property to them as joint tenants, they should have been put on at least "inquiry notice" of the manner in which the Property was actually titled in them.

II.

We review de novo whether the FDIC and Sentinel are entitled to a dismissal of the Pilzes' complaint for failure to state a claim upon which relief could be granted. See Schatz v. Rosenberg, 943 F.2d 485, 489 (4th Cir. 1991), cert. denied, 503 U.S. 936 (1992). When review-

_____

**3** Md. Code Ann., Cts. & Jud. P.§ 5-101 states that unless otherwise provided, "[a] civil action at law shall be filed within three years from
the date it accrues . . . ."
**4** Although Sentinel never filed a motion to dismiss, the district court
concluded that because the Pilzes' claims against both defendants

arose on the same day (the loan closing held on February 3, 1992) and because that day was more than three years prior to the date they filed their suit in Maryland state court (November 15, 1995), their suit was time barred as to both the FDIC and Sentinel.

5

ing a motion to dismiss for failure to state a claim, factual allegations
must be construed liberally in favor of the plaintiffs. <u>See</u> <u>Battlefield</u>
<u>Builders, Inc. v. Swango</u>, 743 F.2d 1060, 1061-62 (4th Cir. 1984). We
will affirm a dismissal pursuant to Rule 12(b)(6) only when it appears
beyond doubt that the plaintiffs can prove no set of facts in support
of their claims which would entitle them to relief. <u>See Conley v.</u>
<u>Gibson</u>, 355 U.S. 41, 45-46 (1957).

III.

The parties do not dispute that Maryland's three-year statute of
limitations applies to this case. Nor is there any dispute that the stat-
ute of limitations issue with regard to notice is dispositive of the
FDIC and Sentinel's entitlement to a dismissal of the Pilzes' claims
under Rule 12(b)(6). Pursuant to Maryland's general three-year stat-
ute of limitations, the Pilzes' claims against the FDIC and Sentinel are
time barred if the district court was correct in determining that the
Pilzes should have been aware that the Property was not conveyed to
them as tenants by the entireties or "husband and wife" on February
3, 1992. However, the Pilzes' claims are not time barred if they only
received actual notice of their claims when the $63,000 judgment was
entered against Solomon Pilz. Thus, this appeal boils down to the sin-
gle question of when the Pilzes knew, or reasonably should have
known, under Maryland law, that the deed they executed on February
3, 1992 did not title the Property in them as tenants by the entireties
or "husband and wife."

According to Maryland's discovery rule, the Pilzes' claims against
the FDIC and Sentinel accrued when the Pilzes knew or reasonably
should have known that Perpetual and Sentinel did not abide by their
obligation to convey the Property to them as tenants by the entireties
or "husband and wife" (<u>i.e.</u>, when the Pilzes had actual notice of their
claims). <u>See Poffenberger v. Risser</u>, 431 A.2d 677, 680-81 (Md.
1981). Constructive notice is not sufficient according to Maryland's

discovery rule and therefore, the mere existence of the "joint tenant"
language in the Pilzes' deed is not sufficient by itself to start the limi-
tations clock running on the Pilzes' claims. <u>See id.</u> Instead, there must
have been some "fact or circumstance" which should have led the
Pilzes, through the exercise of due diligence, to engage in a further
inquiry and thereby discover the defect in the deed. <u>See id.</u> at 680.

6

Poffenberger, the seminal case on Maryland's "discovery rule," itself involved a defect in the plaintiff's chain of title about which the Maryland Court of Special Appeals determined that Poffenberger should have had constructive notice. See Poffenberger v. Risser, 421 A.2d 90, 92 (Md. Ct. Spec. App. 1980), rev'd, 431 A.2d 677 (Md. 1981).[5] However, the Maryland Court of Appeals rejected the lower court's constructive notice theory and concluded that there was a genuine issue of fact regarding whether Poffenberger had actual notice of Risser's negligence in not centering the house on his lot. See Poffenberger, 431 A.2d at 679-81. Specifically, the Maryland Court of Appeals reasoned that despite the records in his chain of title, Pof- fenberger was not necessarily put on "actual notice" that his house violated the side-lot restriction. See id. at 681. The Maryland Court of Appeals did not even find that Poffenberger should have been put on "inquiry notice" by what the lower court termed "the obviously off-center" house coupled with the restriction contained in his chain of title. See id. In short, the Maryland Court of Appeals concluded that the reasonableness of Poffenberger's reliance on Risser's exper- tise as a builder and his trust in Risser's ability to center the house on his property was a question of fact that a jury must resolve. See id. at 680-81.

Following the Poffenberger decision, Maryland courts have applied the "discovery rule" in such a manner that makes it difficult for a defendant to secure judgment as a matter of law on the issue of notice as it pertains to the statute of limitations. See generally, O'Hara v. Kovens, 503 A.2d 1313, 1320 (Md. 1986) ("Whether or not the plain-

_____

[5] In that case, the Poffenbergers purchased a lot in an undeveloped sub- division from a developer in August 1972. The subdivision was subject to a residential setback restriction of fifteen feet from side-lot lines. See 431 A.2d at 678. That restriction was clearly set forth on the recorded sub-division plat to which the Poffenbergers had ready access. See id. The Poffenbergers then contracted with Risser to build a house for them which was to be "centered" on the lot so as not to run afoul of the

fifteen foot side-lot restriction. <u>See id.</u> In March 1976, the neighboring lot was surveyed prior to a house being constructed on that site and Mr. Poffen-berger allegedly discovered, for the first time, that his house was built less than eight feet from the neighboring property line, in violation of the side-lot restriction. <u>See id.</u>

7

tiff's failure to discover his cause of action was due to failure on his
part to use due diligence, or to the fact that defendant so concealed
the wrong that plaintiff was unable to discover it .. . is ordinarily a
question of fact for the jury." (quoting <u>Faust v. Hosford</u>, 93 N.W. 58,
59 (Iowa, 1903)). Even when plaintiffs have some reason to suspect
they may have a claim, Maryland courts have been unwilling to
resolve the notice issue as a matter of law, especially when a plaintiff
has relied on the defendant's or some other skilled person's assur-
ances that there was no problem. <u>See Baysinger v. Schmid Prod. Co.</u>,
514 A.2d 1, 4 (Md. 1986) (Because a doctor told the plaintiff that an
intrauterine device was most likely not causing her abdominal pain,
"[w]hether a reasonably prudent person should then have undertaken
a further investigation is a matter about which reasonable minds could
differ . . . ."); <u>DeGroft v. Lancaster Silo Co., Inc.</u>, 527 A.2d 1316,
1325-26 (Md. Ct. Spec. App. 1987).

The <u>DeGroft</u> case is particularly instructive on the difficulty a
defendant has, under Maryland law, to secure judgment as a matter
of law against a plaintiff on a notice based statute of limitations issue.
In <u>DeGroft</u>, the trial court concluded that the plaintiff was put on
inquiry notice in 1977 when his neighbors told him that the silo the
defendant had built for him was leaning. <u>See id.</u> at 1318. With that
in mind, the trial court determined that reasonable minds could not
differ on the notice issue because DeGroft himself called the defen-
dant to complain about the leaning, thereby demonstrating his "actual
knowledge" of the problem. <u>See id.</u>

The Maryland Court of Special Appeals disagreed. <u>See id.</u> at 1325.
Specifically, the Maryland Court of Special Appeals concluded that
a reasonable jury could conclude that DeGroft was entitled to rely on
Lancaster's assurances that the silo was properly constructed, thereby
putting his suspicions to rest:

> It may be that an ordinary and prudent person . . . would
> have disregarded [Lancaster's] assurances . . . [a]nd it may
> be that the . . . extent of the leaning . . . was so marked that
> an ordinary and prudent person would have concluded that
> some fault on the part of [Lancaster] might have been the

cause of the leaning.

> But these were matters for the trier of fact to determine on a record more ample than that before the court . . . .

Id. at 1326.

After considering Poffenberger, Baysinger, and DeGroft, and the manner in which Maryland courts have applied the "discovery rule," it becomes clear that the district court erred when it resolved the notice issue against the Pilzes as a matter of law at this stage of the proceedings. It is true that the Pilzes knew the November 7, 1991 unrecorded deed would have transferred the Property to them as "joint tenants," and that the Pilzes at least should have known that the February 3, 1992 deed also used the term "joint tenants." However, based on the assurances allegedly given by Perpetual and Sentinel, the Pilzes have alleged facts which entitle them to avoid a dismissal of their claims pursuant to Rule 12(b)(6). The Pilzes' knowledge of the underlying events was no more pronounced than Poffenberger's knowledge that his house was not centered on his property, or DeGroft's "actual knowledge" that his silo was poorly constructed, even after his neighbors told him that it was leaning. Specifically, the Pilzes could possibly establish that they were relying on Perpetual and Sentinel's expertise to draft a deed in accordance with Perpetual and Sentinel's own assurances.

In sum, this was not one of the small number of cases that was ripe for dismissal pursuant to Rule 12(b)(6). See Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989) ("In our view, . . . a Rule 12(b)(6) motion should be granted only in very limited circumstances."). We are not passing on the overall merits of the Pilzes' claims, nor forecasting their possible success at the summary judgment stage, or before a jury, should the case proceed that far. Instead, we simply conclude that the Pilzes are entitled to go forward with their case because the complaint sets forth sufficient facts such that it survives a motion to dismiss.

IV.

For the reasons stated herein, we vacate the district court's dismissal of the Pilzes' claims pursuant to Fed. R. Civ. P. 12(b)(6)

and

remand the case to the district court for further proceedings consistent
with this opinion.

<u>VACATED AND REMANDED</u>

10