**COLONY APARTMENTS–CHAPEL HILL LIMITED PARTNERSHIP, Plaintiff,**

v.

**ABACUS PROJECT MANAGEMENT, INC., Defendants.**

**No. Civ.A. AW–00–1514.**

United States District Court, D. Maryland, Southern Division.

June 27, 2002.

James D. Dalrymple, Law Office, Gaithersburg,MD, for Plaintiff.

Cynthia J. Morris, Cathy A. Hinger, Piper Rudnick LLP, Sheila C. Stark, Law Office, Washington, DC, Henry Mark Stichel, Gohn Hankey and Stichel LLP, Baltimore, MD, William C. Edgar, Angela F. Williams, Bryan Cave LLP, Washington, DC, Henry Mark Stichel, Gohn Hankey and Stichel LLP, Baltimore, MD, Michael Peter Gurdak, Jonathan Berman, Jones Day Reavis and Pogue, Washington, DC, for Defendants.

## MEMORANDUM OPINION

WILLIAMS, District Judge.

This case arises out of Plaintiff's claims of professional negligence, negligent mis-

representation, detrimental reliance, respondeat superior, and fraudulent misrepresentation against Defendants Abacus Project Management and AIMCO Residential Group, L.P. in connection with Plaintiff's purchase of apartment buildings in North Carolina. Pending before the Court are seven motions: (1) Defendant Abacus's Motion for Summary Judgment [44–1]; (2) Defendant Abacus's Motion to Strike [45–1]; (3) Defendant Abacus's Motion to Exclude Testimony of Plaintiff's Experts [45–2]; (4) Plaintiff's Motion for Partial Summary Judgment [50–1]; (5) Defendant Abacus's Second Motion for Summary Judgment [54–1]; (6) Defendant AIMCO's Motion for Summary Judgment [55–1]; (7) Defendant AIMCO's Motion to Strike Designation and Testimony of Plaintiff's Proposed Experts [59–1].

The Court has reviewed the pleadings and applicable law. A bench hearing was held on June 21, 2002. *See* D.Md.R. 105(6). For the reasons stated below, the Court will GRANT Defendant Abacus's Second Motion for Summary Judgment [55–1], and will DENY AS MOOT all remaining claims. Likewise, the Court will dismiss and close this case.

## BACKGROUND

Plaintiff Colony Apartments–Chapel Hill, L.P. ("Colony") is a Maryland limited partnership with its principal place of business in Bethesda, Maryland. Defendant Abacus Project Management ("Abacus") is an Arizona corporation with its principal place of business in Arizona. Defendant AIMCO Residential Group, L.P. ("AIMCO" or "Insignia") is a South Carolina corporation.

Colony Apartments (the "Apartments") is a 15 building, 198 unit apartment complex in Chapel Hill, North Carolina. From July 17, 1990, to November 26, 1996, the Apartments were owned by Colony Limited Partnership, a Balcor Company ("Balcor"). Under Balcor's ownership, the Apartments were managed by Allegiance Realty ("Allegiance") until November 4, 1994. At that time, Insignia Residential Group (now AIMCO) purchased Allegiance and assumed all of Allegiance's property management contracts. In July 1995, William Peebles became the Resident Manager of the Apartments and remained so for the remainder of AIMCO's management period.

In November 1996 Plaintiff purchased the Apartments from Colony Limited Partnership for $7,100,000.00. The sale contract provided the property was purchased "AS IS" and "WITH ALL FAULTS." Eichler, Fayne & Associates ("EF & A")[1] provided partial funds for the closing and hired Defendant Abacus, an Arizona corporation, to provide an engineering report on the property.

In November 1996 Plaintiff engaged Pinnacle Realty Management Company ("Pinnacle") to function as Plaintiff's manager and agent at the Apartments. Pinnacle, through its officer and representative, Brenda Measamer, undertook its management function on November 26, 1996, and concluded on August 7, 2000.

Plaintiff claims that Defendant Abacus's engineering report was inaccurate because it failed to specify the existence of certain defects in the property. Plaintiff further alleges that prior to the closing one of its representatives spoke with Mr. Peebles, a representative of Defendant AIMCO, the property manager, about the condition of the property and that AIMCO expressly stated that there were no defects in the property. Colony allegedly relied on the

---

1. Eichler, Fayne & Associates, previously a co-defendant, was dismissed with prejudice by stipulation of the parties on February 22, 2002.

inaccurate representations made by Defendants Abacus and AIMCO in deciding whether to purchase the property.

In 1999, three years after purchasing the Apartments and after receiving numerous complaints from tenants, Colony undertook a new engineering report to assess the structural integrity of the entire apartment complex. The new report revealed that the entire complex suffered from structural deficiencies that were readily discernible when the first engineering report was conducted in 1996. Colony claims that the repairs will cost at least $1,000,000, plus prejudgment and post-judgment interest and costs, and seeks to impose liability on Defendants based on diversity of jurisdiction. 28 U.S.C. § 1332.

Currently there are six Counts remaining in the case. Plaintiff alleges claims of professional negligence, negligent misrepresentation, detrimental reliance, and respondeat superior against Defendant Abacus (Counts I through IV, respectively). In addition, Plaintiff alleges negligent misrepresentation and fraudulent misrepresentation against Defendant AIMCO (Counts V and VI, respectively).

Defendant Abacus has submitted two Motions for Summary Judgment. The first motion seeks summary judgment on grounds that Abacus owes no legal duty to Plaintiff on the facts on this case. The second motion seeks summary judgment on grounds that Plaintiff's claims with regards to the structural deficiencies are barred by the statute of limitations. Defendant AIMCO has submitted a Motion for Summary Judgment on grounds that Plaintiff cannot show either justifiable reliance or an applicable duty of care. Both Defendants Abacus and AIMCO have moved to Strike and Exclude the Testimony of Plaintiff's Experts on grounds that they are not qualified as experts and because their opinions fail to meet the necessary standards of relevance and reliability. Because Abacus's Motion for Summary Judgment based on statute of limitations is dispositive, the Court will address that issue first.

## DISCUSSION

### 1. Applicable Legal Principles

#### a. Motion for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment will be granted when no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). While the evidence of the non-movant is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *Runnebaum v. NationsBank of Md., N.A.,* 123 F.3d 156, 164 (4th Cir.1997) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985)). To defeat such a motion, the party opposing summary judgment must present evidence of specific facts from which the finder of fact could reasonably find for him or her. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' " *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (citations omitted).

#### b. Controlling Law

A federal court sitting in diversity must apply the choice of law of the forum state. *See Riesett v. W.B. Doner & Co.*, 293 F.3d 164 (4th Cir.2002). "In situations when a cause of action accrues in one state and the adjudicatory forum of the action lies in another state, Maryland follows the conflict of laws principle of *lex loci delicti.*" *Naughton v. Bankier,* 114 Md.App. 641, 649, 691 A.2d 712 (1997). This means that in Maryland, federal courts apply the procedural law of the forum state and the substantive law of the place or state of the wrong. *Id.; see also White v. King,* 244 Md. 348, 223 A.2d 763 (1966). As a result, the Court will apply the procedural laws of Maryland and the substantive laws of North Carolina, as the cause of action accrued in that state.

#### 2. Analysis

##### a. Statute of Limitations

Defendant Abacus argues that Plaintiff, via agent and property manager Brenda Measamer, was notified or otherwise became aware of the existence of (a) rotten or wet flooring or (b) rotten or wet structural materials within the apartment buildings at Colony Apartments from a variety of sources before May 24, 1997, when the statute of limitations began to run.

Maryland Code Annotated, Courts and Judicial Proceedings, § 5–101 (1998) provides that "[a] civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced." The meaning of "accrues" is not defined statutorily, however, and Maryland courts have interpreted the term most recently under the "discovery rule." *See Poffenberger v. Risser, et al.,* 290 Md. 631, 431 A.2d 677, 680 (1981). In *Poffenberger,* the Maryland Court of Appeals held that the discovery rule was "applicable generally in all actions and the cause of action accrues when the claimant in fact knew or reasonably should have known about the wrong." *Id.* The court went on to explain that the discovery rule contemplates actual knowledge that is express cognition, or awareness implied from

> "knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry (thus charging the individual) with notice of all facts which such an investigation would in all probability have disclosed if it had been properly pursued. *Id.* at 681. In other words, a purchaser cannot fail to investigate when the propriety of the investigation is naturally suggested by circumstances known to him; and if he neglects to make such inquiry, he will be held guilty of bad faith and must suffer form his neglect."

*Id.* at 681 (quotations omitted).

In the case at hand, Defendant Abacus contends that the cause of action began to accrue more than three years prior to May 24, 2000, the date that Plaintiff filed its Complaint. Specifically, Abacus argues that Plaintiff received inquiry notice between November 26, 1996 (the date upon which Plaintiff purchased Colony Apartments), and May 24, 1997, via its authorized agent. Abacus posits that Pinnacle was "made aware of *at least* fifteen (15) separate examples of wet, rotten flooring or wet, rotten structural members within the Colony Apartments complex." Def. Abacus's Second Mot. for Summ.J. at 9.

Abacus bases its argument partially on tenant surveys conducted by Pinnacle, Plaintiff's property manager and agent in March 1997. When asked whether she remembered seeing the results of the tenant surveys, Ms. Measamer, Pinnacle's officer and representative, responded that

she did, and that she did not make the owners of the property aware of the surveys. *See* Dep.Test. of Brenda Measamer, 77–78, Ex. 1, Def. Abacus's Second Mot. for Summ.J. In addition, Ms. Measamer testified that she received the surveys on April 29–30, 1997, and that she "probably would have given [William Peebles] a list of items that needed to be repaired" based on the surveys. *Id.*

The tenant surveys from March 1997 contain various tenant complaints relating to necessary repairs. Some of the comments appear to be typical tenant complaints: "The day I moved it [sic], there was 1/4 inch of water on the bathroom floor—it took 5 days to get it fixed." Another tenant reported, "Dishwasher still leaks, repair of acces [sic] over tub marginal."

On the other hand, several tenant complaints appear suggest structural deficiencies of the Apartments. For example, one survey said, "The dampness that is under our 1st floor apt—it makes our carpet smell musty & moldy—we have allergies—this isn't good for our health—we've told the staff—they didn't seem to believe us ... √ into the dampness under building L. A phone repairmen said there is water under our apt." Another survey noted, "Since the way to the front of main entrance N1, 2, 3, 4 is lower than the surround [sic] area, there is a lot of water when it rains. So *please fix it.*" A third survey stated, "Mildew. odor difficult to tolerate. Entrance ways (carpet, smell) are unsightly." Another tenant complained that "There was a lot of insulation that fell which I had to clean up ... Turning on the hot water, I have a rush of orange/brown water which eventually cleared but this is absurd! ... I have water stains all over my ceiling. Repainting doesn't solve the problem. The wood in the roof is probably rotten or at least has holes in it." Finally, another tenant

reported, "Drainage for all those beautiful new machines is inadequate, hence—wet and dirty floors." Def. Abacus's Mot. for Summ.J., Ex. 8.

In addition to the tenant surveys, Defendant Abacus also relies on deposition testimony of Ms. Measamer, in which she testified that on January 7, 1997, she received her first tenant complaint regarding water leaks or wetness within apartment walls or bathrooms, i.e., that "[Apartment] L–13 bathroom ceiling is coming down." *Id.* at 75.

Although a few of the above complaints seem to be typical tenant complaints, other comments suggest that as the property manager, Ms. Measamer was on notice of facts which would lead an ordinary prudent person to investigate the structural soundness of the buildings.

 Maryland law provides that "notice to an agent, who has actual or apparent authority to receive it, is binding on his principal." *Mass Transit Admin. v. Granite Constr. Co.*, 57 Md.App. 766, 471 A.2d 1121, 1128 (1984). That is, notice to an agent is "notice to the corporation 'where the ... agent in the line of his duty "ought, and could reasonably be expected, to act upon or communicate the knowledge to the corporation." ' " *Hecht v. Resolution Trust*, 333 Md. 324, 345–46, 635 A.2d 394 (Md.App.1994) (quoting *Int'l Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 580 (Tex.1963)). In this case, the Property Management Agreement between Colony Apartments and Pinnacle that set forth terms of the appointment of Pinnacle as Plaintiff's "sole and exclusive property manager to lease and manage the property," *see* Def. Abacus's Mot. for SummJ., Ex. 2. Furthermore, the contract provided that Pinnacle would act "in a fiduciary capacity with respect to the protection of and accounting for" Colony's property. The terms of the agency relationship between Pinnacle and Plaintiff seem clear.

Ms. Measamer issued the surveys and reviewed the complaints as they came in. In addition, Ms. Measamer testified that she was aware of all aspects of the operation and management of the Apartments; that she learned of all aspects of Plaintiff's operations through her regular visits to the Apartments, supervision of the day-to-day physical operation of the Apartments through by employees located on the premises, and her supervision of business operations of the Apartments. *See* Dep. Test. of Brenda Measamer, Def. Abacus's Second Mot. for Summ.J., Ex. 1, at 45. Based on Ms. Measamer's intimate involvement in the operations of the Apartments, as well as her agency relationship with Plaintiff, the Court finds that Plaintiff had implied knowledge of the structural deficiencies before May 24, 1997.

Plaintiff's Opposition repeatedly argues that the various tenant complaints have nothing to do with "rotten joists in crawlspaces." Plaintiff's counsel reiterated this argument at the hearing. However, Plaintiff's Amended Complaint does not deal specifically with rotten joists in crawlspaces, but speaks to the "entire apartment complex suffer[ing] from major structural problems." Pl.'s Second Am.Compl. ¶ 10. Thus, Plaintiff's argument that the tenant surveys do not speak to the Complaint is misplaced. Plaintiff relies on *Pennwalt Corp. v. Nasios,* 314 Md. 433, 550 A.2d 1155 (1988), for the proposition that "[a] plaintiff who cannot gain knowledge of a defendants' breach of duty is in the same position as one who cannot discover injury because both are 'blamelessly ignorant' and cannot be said to have slept on their rights." *Id.* at 1166. However, *Pennwalt* dealt with the discovery rule in a products liability case and is not dispositive of the facts of this case. In sum, Plaintiff argues that it did not receive notice of the structural deficiencies until 1998. This actual knowledge is supported in the deposition testimony of Ms. Measamer. *See* Dep. Test. of Brenda Measamer, Def. Abacus's Second Mot. for Summ.J., Ex. 1 at 23. Because the issue here relates to *implied knowledge,* however, Ms. Measamer's actual knowledge is not conclusive as to when the statute of limitations began to run.

Finally, in its Opposition Plaintiff references an "Affidavit of Brenda Measamer attached hereto" that rebuts Abacus's contention that Plaintiff was made aware of tenant complaints in March and April of 1997. However, the affidavit was not attached to the Opposition, and Plaintiff has not proferred any other evidence to rebut the contention that Ms. Measamer was on inquiry notice as to the structural deficiencies as early as April 1997. Therefore, Plaintiff has failed to show that there is a genuine dispute as to a material fact with regards to Plaintiff's implied knowledge. It is difficult to believe that a ordinary prudent person who reviewed the tenant surveys and discussed them with another manager would not have investigated further into the tenants' complaints. This omission seems particularly egregious in that Pinnacle took management over the property in November 1996 and complaints began shortly thereafter.

Based on the tenant surveys and complaints in which Ms. Measamer was involved, it appears that she was put on inquiry notice as to some structural problems, such as water under Building L, rotten wood in the ceiling of Building L, and mildew and drainage problems in Building O. Given that Ms. Measamer's agency relationship with Plaintiff, the Court attributes Ms. Measamer's notice to her principal, Plaintiff, and finds that Plaintiff had implied knowledge as to the structural deficiencies several months before May 24, 1997. Thus, the Court grants summary judgment to Defendant Abacus on all counts. Although Defendant AIM-

CO did not move for summary judgment based on statute of limitations, the Court also grants, *sua sponte,* summary judgment to AIMCO, as Plaintiff's claims with respect to AIMCO arise out of the same set of circumstances.

### CONCLUSION

Based on the foregoing, the Court grants summary judgment to Defendants on the statute of limitations issue. Therefore, the Court need not reach the remaining motions and will deny as moot Defendants Abacus's and AIMCO's remaining motions for summary judgment, Defendants Abacus's and AIMCO's Motions to strike and exclude experts, and Plaintiff's partial motion for summary judgment. The Court likewise will close this case. An Order consistent with this Memorandum Opinion will follow.

### ORDER

For the reasons stated in the accompanying Memorandum Opinion, IT IS this _____ day of June, 2002, in the United States District Court for the District of Maryland, ORDERED THAT:

1. Defendant Abacus's Second Motion for Summary Judgment [54–1] BE, and the same hereby IS, GRANTED;

2. Defendant Abacus's Motion for Summary Judgment [44–1] BE, and the same hereby IS, DENIED AS MOOT;

3. Defendant Abacus's Motion to Strike [45–1] BE, and the same hereby IS, DENIED AS MOOT;

4. Defendant Abacus's Motion to Exclude Testimony of Plaintiff's Experts [45–2] BE, and the same hereby IS, DENIED AS MOOT;

5. Plaintiff's Motion for Partial Summary Judgment [50–1] BE, and the same hereby IS, DENIED AS MOOT;

6. Defendant AIMCO's Motion for Summary Judgment [55–1] BE, and the same hereby IS, DENIED AS MOOT;

7. Defendant AIMCO's Motion to Strike Designation and Testimony of Plaintiff's Proposed Experts [59–1] BE, and the same hereby IS, DENIED AS MOOT;

8. The Clerk of the Court CLOSE this case;

9. The Clerk of the Court transmit copies of this Memorandum Opinion and Order to all counsel of record.