**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 12-1515**

THE CHESAPEAKE BAY FOUNDATION, INCORPORATED; SMITHGROUP, INCORPORATED, d/b/a KCF-SHG Incorporated; CLARK CONSTRUCTION GROUP, LLC, f/k/a The Clark Construction Group, Inc.,

        Plaintiffs – Appellants,

        v.

WEYERHAEUSER COMPANY, formerly doing business as Trus Joist MacMillan; WEYERHAEUSER NR COMPANY, formerly doing business as Trus Joist MacMillan,

        Defendants – Appellees,

        v.

PERMAPOST PRODUCTS CO.,

        Third Party Defendant – Appellee.

Appeal from the United States District Court for the District of Maryland, at Greenbelt.  Alexander Williams, Jr., District Judge.  (8:11-cv-00047-AW)

Argued:  January 29, 2014                    Decided:  July 31, 2014

Before MOTZ, KING, and DIAZ, Circuit Judges.

Vacated and remanded by unpublished per curiam opinion.

**ARGUED**: Jack McKay, PILLSBURY WINTHROP SHAW PITTMAN LLP, Washington, D.C., for Appellants. Tracy Lynn Steedman, NILES, BARTON & WILMER, LLP, Baltimore, Maryland, for Appellees. **ON BRIEF**: Paul S. Caiola, Ward B. Coe, III, Rebecca C. Salsbury, GALLAGHER EVELIUS & JONES, LLP, Baltimore, Maryland, for Appellant The Chesapeake Bay Foundation, Incorporated. Michael Evan Jaffe, Glenn C. Kennett, Cynthia Cook Robertson, PILLSBURY WINTHROP SHAW PITTMAN LLP, Washington, D.C., for Appellant Clark Construction Group, LLC. Kevin J. Gleeson, Maria L. Meldrum, SULLIVAN, WARD, ASHER & PATTON, P.C., Southfield, Missouri; Laurence Schor, Susan L. Schor, ASMAR, SCHOR & MCKENNA, PLLC, Washington, D.C., for Appellant SmithGroup, Incorporated. Robert P. O'Brien, NILES, BARTON & WILMER, LLP, Baltimore, Maryland, for Appellees Weyerhaeuser Company and Weyerhaeuser NR Company. Matthew T. Angotti, Cullen B. Casey, ANDERSON, COE & KING, LLP, Baltimore, Maryland, for Appellee Permapost Products Co.

_____

Unpublished opinions are not binding precedent in this circuit.

2

PER CURIAM:

The three plaintiffs in this diversity action — The Chesapeake Bay Foundation, Incorporated, SmithGroup, Incorporated, and Clark Construction Group, LLC (separately, "CBF," "SmithGroup," and "Clark," and collectively, the "plaintiffs") — appeal from the district court's award of summary judgment to defendants Weyerhaeuser Company and Weyerhaeuser NR Company (together, "Weyerhaeuser") on the ground that the plaintiffs' various state law claims are time-barred. See Chesapeake Bay Found., Inc. v. Weyerhaeuser Co., No. 8:11-cv-00047 (D. Md. Mar. 23, 2012) (the "Opinion"), ECF No. 109.[1] As explained below, we vacate and remand for further proceedings.

I.

A.

This litigation arose from the construction in 1999 and 2000 of CBF's headquarters facility, the Philip Merrill Environmental Center (the "Merrill Center"), on the Chesapeake

---

[1] The district court's Opinion is published at 848 F. Supp. 2d 570 and also found at J.A. 868-94. (Citations herein to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in this appeal.)

3

Bay in Annapolis, Maryland.[2] SmithGroup designed the Merrill Center, and Clark oversaw its construction. SmithGroup's "green" design called for exposed structural wood members outside the envelope of the Merrill Center, including some that penetrated the building's façade. Under a March 3, 2000 purchase order that it entered into with Clark, Weyerhaeuser agreed to provide Parallam PSL columns and beams ("Parallams") for use as the exposed wood members.

Parallams, which have a rough-hewn appearance, are manufactured by bonding together strips of wood. The wood strips' lack of uniformity creates channels, or "avenues," that run longitudinally through the Parallams. Thus, water is expected to infiltrate Parallams used outdoors. To protect against rotting, Parallams are pressure-treated with a wood preservative intended to fully penetrate the avenues. Its contract with Clark required Weyerhaeuser to treat the Merrill Center's Parallams with the preservative PolyClear 2000. Weyerhaeuser engaged third party defendant Permapost Products Co. ("Permapost") to apply the PolyClear 2000 treatment to a specified retention level, and Permapost provided certificates

---

[2] For purposes of our review of the district court's summary judgment award, we recite the facts in the light most favorable to the plaintiffs, as the nonmoving parties. See Durham v. Horner, 690 F.3d 183, 185 n.3 (4th Cir. 2012).

to Weyerhaeuser — later shared by Weyerhaeuser with the plaintiffs — verifying that such retention level had been reached.

Following completion of the Merrill Center in late December 2000, water began leaking through Parallams into the building. In 2001 and 2002, the leakage was investigated by two outside consultants hired by Clark; the first of those consultants, Wiss, Janney, Elstner Associates, Inc., issued a report on May 8, 2001 (the "2001 Report"), and the second, Vaughn Woodwork Consultants, released a report on May 24, 2002 (the "2002 Report"). The focus of the 2001 and 2002 Reports was on the cause of the leakage into the Merrill Center: water travelling from the exterior to the interior of the building through the avenues in the Parallams.

The 2001 Report also mentioned that such water could cause deterioration or rot in the Parallams themselves if they were not properly treated with a wood preservative. Although the 2002 Report could have been read to similarly warn about Parallam deterioration, its author had not considered such a possibility because he believed that the Merrill Center's Parallams had been properly treated with PolyClear 2000. Indeed, three days before issuing the 2002 Report, he told the plaintiffs that Parallams were a "good durable product" and "as good as a [railroad] tie," and that their "pressure treating

5

[was] good," so they would "not rot for a long period of time." J.A. 671. Meanwhile, the plaintiffs worked closely with Weyerhaeuser on the leakage problem and shared with it the 2001 and 2002 Reports. In response, Weyerhaeuser assured the plaintiffs that the Merrill Center's Parallams had been properly treated with PolyClear 2000 and were not at risk of premature deterioration. Moreover, at least three Weyerhaeuser representatives examined the Parallams and failed to note the presence of rotting.

After the leaking was stopped in 2004 with the use of sealants, the plaintiffs anticipated no further problems with the Parallams. During a routine inspection in July 2009, however, Parallams were found to be deteriorating. The plaintiffs subsequently learned that the Parallams had not been treated with PolyClear 2000 as certified, that PolyClear 2000 was not in any event well-suited to the job of preserving the Parallams, and that Weyerhaeuser had knowingly given false assurances to the contrary.

B.

The plaintiffs initiated this action in the Circuit Court for Montgomery County on December 3, 2010, and Weyerhaeuser filed a notice of removal in the District of Maryland on January 6, 2011. The complaint focused on the deterioration of the Merrill Center's Parallams and sought damages for, inter alia,

6

the costs of investigating and implementing remedial measures. According to the complaint, Weyerhaeuser breached its contract with Clark (Count I), owed common law indemnity (Count II) and contribution (Count III) to SmithGroup and Clark, and was liable to CBF and SmithGroup for negligent misrepresentation (Count IV) and negligence (Count V).

On January 20, 2011, Weyerhaeuser answered the complaint, asserted counterclaims against the plaintiffs, and filed its third party complaint against Permapost. Following extensive discovery, Weyerhaeuser sought summary judgment on the plaintiffs' claims, invoking the applicable statute of limitations. Weyerhaeuser and Permapost also made separate summary judgment motions with respect to Weyerhaeuser's various cross- and counterclaims. By its Opinion and an accompanying Order of March 23, 2012, the district court granted Weyerhaeuser's motion for summary judgment as to the plaintiffs' claims and thus denied as moot all other summary judgment motions. The plaintiffs timely noted this appeal, and we possess jurisdiction under 28 U.S.C. § 1291.

## II.

We review de novo a district court's award of summary judgment, viewing the facts and inferences reasonably drawn therefrom in the light most favorable to the nonmoving party.

7

See Core Commc'ns, Inc. v. Verizon Md. LLC, 744 F.3d 310, 320 (4th Cir. 2014). A summary judgment award is appropriate only when the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

## III.

In awarding summary judgment to Weyerhaeuser, the district court concluded that the plaintiffs' state law claims are time-barred.[3] Maryland's statute of limitations provides that "[a] civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced." Md. Code Ann., Cts. & Jud. Proc. § 5-101. Maryland follows the discovery rule, which provides that "the cause of action accrues when the claimant in fact knew or reasonably should have known of the wrong." Poffenberger v. Risser, 431

---

[3] The district court correctly determined, and the parties do not dispute, that Maryland law applies to the plaintiffs' claims. See Opinion 9-11.

8

A.2d 677, 680 (Md. 1981).  Where "the knowledge of a cause of action is kept from a party by the fraud of an adverse party, the cause of action shall be deemed to accrue at the time when the party discovered, or by the exercise of ordinary diligence should have discovered the fraud."  Md. Code Ann., Cts. & Jud. Proc. § 5-203.

Rejecting the plaintiffs' contention that their claims did not accrue until they discovered the deteriorating Parallams in 2009, the district court ruled that the 2001 and 2002 Reports put the plaintiffs on actual and inquiry notice of their cause of action.  Premised on those same Reports, the court further determined that the plaintiffs could not rely on allegations of fraud to toll the limitations period under § 5-203 — particularly since the parties were "cosmopolitan commercial counterparts."  See Opinion 25.  The court summarized that it

> agree[d] that a factual dispute exists regarding whether the 2001 and 2002 Reports notified Plaintiffs that the wood was rotting per se.  All the same, the rot is not a standalone injury lacking a meaningful tie to the cracks, voids, splits, water penetration, and potential for deterioration that the Reports discuss.  Rather, it is just the ultimate manifestation of this constellation of injuries.

Id. at 21.  The court thus calculated that the plaintiffs' claims "accrued no later than May 2002 and expired more than half a decade before they filed suit."  Id. at 20.

9

We disagree with the district court. The court "confused one harm — water infiltration through the exterior Parallams into the interior of the Merrill Center, that was known to everyone in 2001 — with another harm — potential wood rot in the Parallams." Br. of Appellants 20. Additionally, the court relied on the premise that "[a]ny ordinary person knows that, all else equal, wet wood rots." See Opinion 16; see also id. at 22 ("To reiterate, just about anyone who has ever stained a deck knows that cracked, waterlogged wood stands to rot.").

Viewing the evidence in the light most favorable to the plaintiffs, a genuine dispute exists as to whether knowledge of the water infiltration problem would have put a reasonable person on notice that the Parallams were susceptible to premature deterioration and that their PolyClear 2000 treatment would not preserve them. See Bank of N.Y. v. Sheff, 854 A.2d 1269, 1275 (Md. 2004) ("[I]f there is any genuine dispute of material fact as to when the plaintiffs possessed that degree of knowledge, the issue is one for the trier of fact to resolve; summary judgment is inappropriate."). The record is clear that, when they are used outdoors, Parallams are expected to retain water. The record also reflects that sealing a Parallam from leaks and protecting it from rot are distinct enough that evidence of water infiltration would not necessarily indicate a danger of deterioration. Furthermore, although the 2001 and

10

2002 Reports indicated that Parallams are subject to rot if not properly treated, the Reports did not expressly assert that the treatment of the Merrill Center's Parallams was inadequate.

To the extent that the 2001 and 2002 Reports nevertheless may have put the plaintiffs on inquiry notice of the Parallam deterioration, there is a genuine dispute as to whether the plaintiffs conducted a reasonably diligent investigation by seeking and receiving assurances from Weyerhaeuser that the Parallams were properly treated. See Baysinger v. Schmid Prods. Co., 514 A.2d 1, 4 (Md. 1986) ("Whether a reasonably prudent person should then have undertaken a further investigation is a matter about which reasonable minds could differ, and it was therefore inappropriate for resolution by summary judgment."). Likewise, there is a genuine dispute as to whether Weyerhaeuser, through fraud or concealment, frustrated the plaintiffs' ability to discover their claims. See Mathews v. Cassidy Turley Md., Inc., 80 A.3d 269, 290 (Md. 2013) ("Whether a plaintiff's failure to discover a cause of action was attributable to fraudulent concealment by the defendant is ordinarily a question of fact to be determined by the factfinder, typically a jury." (citing O'Hara v. Kovens, 503 A.2d 1313, 1320 (Md. 1986))). Finally, while the relative sophistication of the parties may be considered by the jury, it is a credibility issue that has no

11

place in the summary judgment analysis.  See id. at 289-90 & n.39.

IV.

Pursuant to the foregoing, we vacate the district court's judgment and remand for such other and further proceedings as may be appropriate.

VACATED AND REMANDED

12